**Julie DUBBS, and all others similarly situated, Plaintiffs,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Defendants.**

**No. C–85–4379 EFL.**

United States District Court, N.D. California.

Aug. 20, 1990.

Richard Gayer, San Francisco, Cal., for plaintiffs.

Patrick Sorek, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

LYNCH, District Judge.

Defendants have renewed their motion to dismiss plaintiff's complaint for failure to state any claim upon which relief may be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having considered the briefs and relevant precedent, the Court hereby denies defendants' motion to dismiss this action, but dismisses plaintiff's second claim with prejudice.

## BACKGROUND

For the sake of brevity, the Court omits a lengthy recitation of the facts, and refers parties to the statement of facts contained in the Ninth Circuit's opinion in *Dubbs v. CIA*, 866 F.2d 1114 (1989) and to this Court's prior opinions in this action rendered on November 27, 1985 and September 3, 1986.

Briefly stated, plaintiff Julie Dubbs is an openly gay woman who has worked at SRI International, a private non-profit research institute, for over nine years. Her present position of employment is as a Senior Technical Illustrator. During the course of her employment and because her job duties so required, she sought Top Secret security clearance from the Department of Defense and Sensitive Compartment Information ("SCI") security clearance from the Central Intelligence Agency ("CIA"). Although

the Department of Defense granted her a security clearance, defendant Director of Security for the CIA and defendant Director of the CIA denied her a SCI security clearance.

She filed suit against the CIA, its Director and its Director of Security in July 1985, alleging, among other claims, that the defendants denied her the SCI clearance pursuant to an unconstitutional blanket policy of denying such clearances to gay persons. After this Court granted defendants' motion for summary judgment, finding, with respect to plaintiff's blanket policy claim, that there was no genuine issue of material fact with respect to the existence of such a policy, the Ninth Circuit Court of Appeals reversed and remanded this action for further proceedings. *See Dubbs*, 866 F.2d 1114.

## DISCUSSION

Defendants have moved to dismiss plaintiff's first amended complaint[1]. This complaint contains the following claims: (1) an equal protection claim based upon the CIA's alleged blanket policy of denying security clearances to homosexuals (Compl., paras. 11–14)[2] ("Blanket Policy claim"); (2) an Administrative Procedure Act claim based upon the CIA's alleged failure its own directives (Compl., paras. 15–19) ("APA claim"); (3) an equal protection claim, based upon another alleged policy of the CIA which discriminates against gay persons by considering "homosexuality and related social conduct as negative factors" while not "similarly view[ing] heterosexuality and related social conduct" (Compl., paras. 20–22) ("Negative Factor claim"); (4) an alleged violation of plaintiff's first amendment right to associate freely with other homosexuals (Compl., paras. 23–25) ("First Amendment claim"); and (5) a Bivens action against the Director of Security because defendant Director of Security falsely accused plaintiff and another of concealing their homosexuality, in order to deprive her of various constitution-

al rights (Compl., para. 27) ("Bivens claim").

## I. THE APPLICABLE TEST.

Generally, in considering a motion under 12(b)(6), the Court is required to believe all well-pleaded facts in the complaint as true, and to make all reasonable factual inferences in support of the complaint. As the Supreme Court stated in the leading case on this type of motion,

> in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Of course, the Court is not required to accept every statement made in a complaint as true; for example, courts do not accept as true legal conclusions cast in the form of factual allegations if such conclusions cannot be reasonably drawn from the facts alleged, or if such conclusions contradict matters of public record or items appearing in the record of the case. *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357 (2d ed. 1990).

Thus, for purposes of ruling upon defendants' motion, the Court accepts as true the following allegations: the CIA has a blanket policy of denying security clearances to all homosexuals even if they are trustworthy individuals (claim 1); the CIA generally follows the procedure set forth in Director of Central Intelligence Directive No. 1/14 in adjudicating applications for access to SCI but did not follow this procedure in adjudicating plaintiff's application and instead denied her application solely because of her homosexuality and sexual conduct (claim 2); the CIA views homosexuality and homosexual conduct as negative factors in deciding whether or not to grant

---

1. The Court denied defendants' motion to dismiss the original complaint in a memorandum opinion dated November 27, 1985.

2. All citations to plaintiff's first amended complaint will be in the form of "Compl." and then to the paragraphs cited.

a security clearance but does not so consider heterosexuality or heterosexual conduct (claim 3); the CIA assumes that plaintiff is likely to be susceptible to indirect coercion resulting from future relationships with secretly gay women (claim 4); and the defendant Director of Security falsely accused plaintiff of concealing her homosexuality in order to harm her professionally (claim 5).

■ The Court does not accept as true plaintiff's allegation that homosexuals are "members of a suspect class" (Compl., para. 11, at p. 4) to the extent that this allegation would require the Court to apply a heightened standard of scrutiny. This is a legal conclusion, and it may not be reasonably be inferred from the facts alleged in the complaint because the Ninth Circuit, as all parties are well aware, has recently decided that classifications based upon homosexuality are not entitled to heightened scrutiny, but rather are to be tested by a rational basis standard. *High Tech Gays v. Defense Ind. Sec. Clearance Office*, 895 F.2d 563 (9th Cir.1990), *rehearing en banc denied*, 909 F.2d 375 (1990). A plaintiff cannot, by clever pleading, defeat a motion to dismiss if it is obvious from the face of the complaint that there is no basis for the relief requested; thus, plaintiff cannot decide for herself the appropriate standard of review, if this decision has already been made by a court of controlling authority. *See* 5A C. WRIGHT, *supra*, § 1357, at pp. 320–321 (discussing a dismissal of a complaint alleging an unconstitutional deprivation of property because more specific allegations revealed that plaintiff had an action for slander).

3. The Court accepts, as a general matter, the language in *Egan* which indicates that courts ought to be extremely deferential in reviewing issues such as the denial or granting of security clearances that are constitutionally committed to the Executive Branch and involve highly discretionary decisions requiring specialized expertise. *See, Egan*, 484 U.S. at 527–530, 108 S.Ct. at 824–826. However, such deference to Executive Branch decisions does not require the Judiciary to abdicate *its* authority under Article III to decide whether or not an individual's right to equal protection under the Federal Constitution has been violated. Thus, despite such deference, the Supreme Court concluded that a color-

## II. THE ADEQUACY OF PLAINTIFF'S CLAIMS.

Defendants argue that each of plaintiff's five claims fails to state a basis upon which relief may be granted; therefore, they conclude that this action must be dismissed.

### A. The Blanket Policy Claim.

■ Defendants' motion to dismiss plaintiff's first claim is largely disposed of by the test applicable to a Rule 12(b)(6) motion to dismiss. Defendants essentially argue, citing *Dept. of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), that this Court ought to be extremely deferential to decisions affecting national security, and thus may presume that they would be acting rationally in denying security clearances to all homosexuals, or to persons engaging in homosexual conduct.

First, this Court finds defendants' reliance upon *Egan* to be partially misplaced.[3] The Ninth Circuit panel in this case specifically relied upon the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), in finding that Dubbs' equal protection claims are reviewable despite the inquiry into the affairs of the CIA compelled by participation in the discovery process. *See Dubbs*, 866 F.2d at 1120.

More importantly, defendants' argument requires this Court to presume that they have acted rationally in the present case and would be acting rationally *in any case* where they deny an individual a security clearance because of her homosexual orientation and conduct. This standard, while not wholly unprecedented in constitutional jurisprudence,[4] would effectively eviscerate

able constitutional claim by a homosexual that the CIA's discharge of him violated his rights was reviewable because Congress had not clearly precluded constitutionally-based claims from judicial review. *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

4. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (rejecting equal protection and due process challenges brought by opticians to Oklahoma law which required written prescriptions from an ophthalmologist or optometrist for a lens fitting by inferring legitimate government purposes which *might* be served by such a requirement).

the *Dubbs* panel's decision that plaintiff's equal protection claims are colorable (*see id.*, at 1119 & n. 8), something which this Court is not at liberty to do in the absence of a contrary decision from the Ninth Circuit or a higher court.

The Ninth Circuit's decision in *High Tech Gays* does not compel a different result. In fact, *High Tech Gays*, although generally helpful to defendants, suggests that granting defendants' motion with respect to this claim is unwarranted.

*High Tech Gays* involved an equal protection challenge to the Department of Defense's policy of subjecting homosexual, but not heterosexual, applicants for security clearances to an expanded investigation of their personal lives because of their sexual orientation and conduct. As noted above, the Ninth Circuit initially found that the Defense Department security clearance regulations at issue were to be reviewed under a rational basis standard, and not under any heightened scrutiny. 895 F.2d at 571–574. The Court of Appeals then proceeded to examine the evidence in the record in order to determine if a genuine issue of fact remained as to the issue of whether the Defense Department's policy was rationally related to a legitimate government interest. After examining the exhibits introduced by all parties, the Court of Appeals found that the Department of Defense "met its initial burden of production" (demonstrating the possible existence of a rational basis for its regulations) and that "plaintiffs' affidavits do not raise genuine issues as to any fact material to [their equal protection claim]." 895 F.2d at 578.

If defendants' argument that this Court may properly decide the constitutionality of a blanket policy of denying all homosexual

persons access to SCI upon a motion to dismiss were correct, then the *High Tech Gays* court should not have proceeded to examine the evidence adduced by the parties. Rather, after having decided the appropriate level of scrutiny, it should have presumed, as defendants ask this Court to do, that the Department of Defense acted rationally in subjecting all persons who engage in homosexual conduct to an expanded security clearance check. The fact that the court in *High Tech Gays* did not adopt this approach indicates that it necessarily assumed that government had to articulate a rational relationship between their policy and the ends which it is designed to serve.

Lastly, defendants' position is directly contrary to those cases which have held that a government agency which discriminates against homosexuals "must justify that discrimination in terms of some government purpose," *Padula v. Webster*, 822 F.2d 97, 104 (D.C.Cir.1987) or which have required the government to demonstrate the existence of a rational nexus between the denial of the security clearance and the applicant's homosexual activity. *See, e.g., Gayer v. Schlesinger*, 490 F.2d 740, 748–752 (D.C.Cir.1973); *McKeand v. Laird*, 490 F.2d 1262 (9th Cir.1973) (upholding district court's granting of summary judgment against applicant who was denied a security clearance because of homosexual activity where the denial was supported by factual findings demonstrating the existence of a rational nexus). None of these courts found it proper to imagine that a legitimate government interest would necessarily be served by denying a security clearance to a homosexual and then summarily uphold this denial, as defendants invite this Court to do.[5]

---

*But cf. City of Cleburne*, 473 U.S. at 458, 105 S.Ct. at 3264 (Marshall, J., concurring in part in judgement and dissenting in part) ("But however labeled, the rational-basis test invoked today is most assuredly not the rational-basis test of *Williamson v. Lee Optical Co.*").

5. It should also be noted that the Supreme Court in recent years has been less inclined to uphold automatically every governmental action under rational basis scrutiny. Even statutes regulating economic matters—an area where the highest degree of judicial deference

has typically been shown—have been found to lack a rational basis. *See, e.g., Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (invalidating Alabama domestic preferences tax statute as a violation of equal protection rights law on nonresidents because it served no legitimate purpose); *see also City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (finding, under rational basis analysis, that a residential zoning permit requirement violates

While the Supreme Court's decision in *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) has been interpreted to mean that government actions that discriminate based upon homosexuality or homosexual conduct are not subject to heightened scrutiny, no court, so far as this Court is aware, has interpreted *Bowers* to allow for the elimination of the equal protection rights of homosexuals.[6] Accordingly, finding no precedent compelling a contrary result, and because the Court cannot say beyond doubt and under any set of facts that this claim must fail, it hereby denies defendants' motion to dismiss with respect to plaintiff's first claim.

■ For the benefit of all parties, the Court wishes to spell out how it believes that the constitutionality of this claim should be resolved. The Court has determined that this claim ought to be resolved according to the following three-step process, which it has derived based upon its reading of the Ninth Circuit's decisions in *Dubbs* and *High Tech Gays:*

(1) This Court, as trier of fact, will first make findings regarding the factual issues of what the CIA's policy towards homosexuals and/or persons who engage in homosexual conduct actually is (i.e., a policy of denying security clearances to all such persons, or treating such conduct as a "negative factor", or something else) and what are the government interests which this policy is supposed to serve.

The Ninth Circuit, in *Dubbs*, stated that whether a blanket policy existed was a triable issue of fact. *Dubbs*, 866 F.2d at 1119. Thus, because the defendants deny that such a policy exists, this Court might have to hold a trial in order to resolve this issue.

(2) After determining the policy and the government interests served by it, this Court then must determine what are the reasons for this policy which indicate, or fail to indicate, that this policy is rationally related to these interests.

The Court believes that this also is a factual issue. As noted above, in *High Tech Gays* the government offered, as its reason for the policy at issue, evidence indicating that hostile foreign intelligence services specifically target persons who engage in homosexual conduct for blackmail or coercion. 895 F.2d at 574–78. Because the plaintiffs then failed to offer evidence which indicated that foreign intelligence services did not follow such a practice, the Ninth Circuit found that no factual dispute remained for trial with respect to the existence of the factual premise for the policy at issue. *Id.* at 578.

(3) Assuming that the factual issues in (1) and (2) are settled, this Court will then decide, as a matter of law, whether the identified policy is or is not rational.

It may turn out that not all of these steps will have to be followed. For example, if no blanket policy is found by the trier of fact to exist, then obviously the constitutionality of such a policy need not be decided. Because this Court believes, however, in refraining from unnecessarily deciding constitutional issues, the existence of this policy and the interests it is intended to serve (step 1) must first be settled. Accordingly, the Court envisions that the factual issues in step 1 should probably be severed out for a separate trial. The par-

the equal protection rights of mentally retarded residents of group home denied such a permit).

**6.** One district court decision, not cited by any of the parties, comes fairly close. *See Doe v. Sparks*, 733 F.Supp. 227, 231–232 (W.D.Pa.1990) ("We hold that conduct which is not in itself protected by substantive due process, natural right, or some source of substantive protection cannot be the basis of an equal protection challenge by the class which engages in the conduct"). The fallacy of this portion of the *Sparks* court's reasoning, aside from the fact that it collapses equal protection analysis with substan-

tive due process analysis, is that it completely ignores such cases as *City of Cleburne,* where the Supreme Court's decision to strike down the residential zoning restriction in no way depended upon the presence of a fundamental right being infringed upon, but rather depended solely upon the illegitimacy of the governmental purpose—prejudice against the mentally retarded—being served. *See* 473 U.S. at 450, 105 S.Ct. at 3259 ("The short of it is that requiring the permit in this case appears to us to rest on an irrational prejudice against the mentally retarded.")

ties, of course, are welcome to suggest any other ideas which they might have, bearing in mind that this Court does not feel it proper to decide constitutional issues unnecessarily.

### B. The APA Claim.

■ Defendants contend that this claim does not state a basis for relief for two reasons. First, defendants argue that this claim is defectively pleaded because the statute under which judicial review is sought, the Administrative Procedure Act is not mentioned nor cited. Second, defendants contend that the regulation which the CIA is alleged to have violated does not create any justiciable standards, and therefore judicial review is precluded by virtue of 5 U.S.C. § 701(a)(2), which forecloses judicial review of an agency decision that is "committed to agency discretion by law."

The Court agrees with defendants that this claim is unartfully pleaded. Plaintiff, while obviously intending to assert that the CIA's alleged violation of Director of Central Intelligence Directive No. 1/14 (Nov. 27, 1984) ("DCID 1/14") is reviewable under Administrative Procedures Act as an arbitrary and capricious agency action, nonetheless asserts that the CIA's actions lack a "rational basis" and violate her "due process" rights; such language essentially repeats the equal protection claims, and does not appear explicitly to state a separate claim for relief under the Administrative Procedure Act.[7] However, such a defect is at most a technical one which could

be overcome by more careful pleading, and therefore the Court would be inclined to grant her leave to amend this claim, if defendants' second contention is incorrect.

Determining if judicial review of a challenged agency action is precluded by section 701(a)(2) of the Administrative Procedure Act ("APA") turns upon whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster*, 108 S.Ct. at 2052, *citing Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Accordingly, the Court turns to the language of the guidelines at issue.

In the very first paragraph, DCID 1/14 states that:

> The standards, procedures, and programs established herein are minimum and the departments and agencies may establish such additional security steps as may be deemed necessary and appropriate to ensure that effective security is maintained.

With respect to the background investigation that is conducted, DCID 1/14 indicates only that the investigation "will be thorough and shall be designed to develop information as to whether the individual clearly meets the ... Personnel Security Standards." DCID 1/14, para. 7.a. These Personnel Security Standards are explained and expanded upon in section entitled "Annex A Adjudication Guidelines." ("Annex A").[8]

---

7. Plaintiff recognizes that this claim may be pleaded defectively. *See* Plaintiff's Brief Opposing Motion to Dismiss, p. 12, lines 19–20 ("If necessary, 'and of the arbitrary and capricious standard of § 706(2)(A) of the APA' may be appended to 19.") As defendants point out, plaintiff's proposed amendment does not cure this deficiency because the section cited therein merely defines the scope of judicial review, and does not establish the right to such review. Plaintiff's right to review under the Administrative Procedure Act exists, if at all, by virtue of title 5 of the United States Code, section 702. This section states, in the pertinent part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review.

To be fair to plaintiff, it should be noted that she does refer generally to the Administrative Procedure Act in the jurisdictional portion of her complaint. *See* Compl., para. 1.

8. Annex A states in pertinent part:
   PURPOSE
   This annex is designed to ensure that a common approach is followed by Intelligence Community departments and agencies in applying the standards of DCID 1/14. These guidelines apply to the adjudication of cases involving persons being considered for first-time access to ... (SCI)
   ADJUDICATIVE PROCESS
   The adjudicative process entails the examination of a sufficient period of a person's life to make a determination that the person is not now or is not likely to become an unac-

Plaintiff essentially contends that defendants violated the guidelines set forth in DCID 1/14 (and Annex A) by focusing exclusively upon her homosexuality and homosexual conduct in deciding to deny her access to SCI, rather than considering her other personal attributes and characteristics.[9]

Defendants argue that DCID 1/14 exudes such deference to the CIA's authority to grant or deny SCI access that plaintiff's APA claim, even if it were properly plead, is unreviewable. They cite *Padula v. Webster*, 822 F.2d 97 as persuasive authority.

*Padula* involved an action brought against the Federal Bureau of Investigation ("FBI") by an applicant who alleged that the FBI refused to hire her as a special agent because of her homosexuality. The plaintiff argued that the FBI's pronouncements in various letters to law schools and elsewhere established a policy of nondiscrimination based upon sexual orientation. The District of Columbia Court of Appeals there found the plaintiff's APA claim unreviewable under 5 U.S.C. section 701(a)(2) because these pronouncements could not be read to establish such a policy:

> Indeed, the FBI was very careful—if a bit clever—not to tie its hands in any way. For example, instead of executing a statement of nondiscrimination at Syracuse University, the Bureau simply reiterated its policy 'not to improperly discriminate against any applicant.'

822 F.2d at 101. Here, Ms. Dubbs has alleged that the CIA has failed to follow a process established by DCID 1/14, not that this process necessarily precludes consideration of her sexual orientation or homosexual conduct.

However, although her claim is distinct from that in *Padula*, the guidelines which plaintiff seeks to invoke to obtain review under the APA are not. As noted above, in the very first paragraph in DCID 1/14, the Director permits the agency official to undertake any other steps which "may be deemed necessary and appropriate" in order to ensure that effective security is preserved. DCID 1/14 at p. 1. Just as the FBI's pledge to not "improperly discriminate" on the basis of sexual orientation did not limit its discretion, the CIA, by allowing its officials to adopt whatever other actions they wish so long as they deem that these actions are "necessary" has likewise not limited its discretion. This Court is in no better position to determine whether any steps taken which deviate from the

---

ceptable security risk later. SCI access adjudication is the careful weighing of a number of variables known as the "whole person" concept.... Each case must be judged on its own merits and final determination remains the responsibility of the individual SOIC. Any doubt concerning personnel having access to SCI shall be resolved in favor of the national security. The ultimate determination of whether the granting of SCI access is clearly consistent with the interests of national security shall be an overall common sense determination based on all available information.

Annex A, p. 7. The official who determines whether to grant SCI access is further directed that he "must give careful scrutiny" to the following factors: loyalty, close relatives and associates, sexual considerations, cohabitation, undesirable character traits, financial responsibility, alcohol abuse, illegal drugs and drug abuse, emotional and mental disorders, record of law violations, and security violations. *Id.*

**9.** Her complaint states in the pertinent part:
    16. Defendant CIA uses Director of Central Intelligence Directive ("DCID") 1/14 to adjudicate applications for access to SCI ...

    17. DCID 1/14 ... requires the CIA to use the "whole person" concept in adjudicating SCI access applications. This concept requires a careful weighing of all characteristics and conduct—both positive and negative—of an applicant for access to SCI and precludes reliance on one negative factor without an explanation of how it outweighs any significant positive factors.

    18. In adjudicating the application of Plaintiff Dubbs, defendant Director of Security relied solely upon Dubbs' Gay sexual orientation and related social activities ... and ignored numerous positive factors such as her openness about her Gay lifestyle, her demonstrated reliability, stability, and trustworthiness under other security clearances, ... and the Army's granting of her access to SCI.

    19. In so doing, the CIA has failed to follow its own regulation and has considered Plaintiff's Dubbs' homosexuality and related conduct as negative factors without having at least a rational basis therefor, in violation of her rights to due process of law.

Compl., pp. 6–7.

"whole person" concept are necessary in order to ensure that effective security is preserved than it was to decide whether granting plaintiff access to SCI would be clearly consistent with the interests of national security. *See Dubbs,* 866 F.2d at 1121. Therefore, review of plaintiff's claim is necessarily precluded by 5 U.S.C. section 701(a)(2) because the Court concludes that there is no law to apply to this claim.

### C. The "Negative Factor" And First Amendment Claims.

█ These claims are essentially the same as those upon which the Ninth Circuit granted summary judgment in favor of the Department of Defense in *High Tech Gays.* Although it might be able to venture a fairly accurate guess as to the reasons for the alleged policy being challenged, defendants have not, as yet, articulated a rational basis for this policy—something which they are required to do in order to prevail on the merits. *See* Discussion, part IIA, *supra.* Accordingly, the Court declines to dismiss these claims at this stage, although the resolution of the factual issues discussed in connection with the blanket policy claim may resolve these claims as well.[10]

### CONCLUSION

For the reasons set forth above, the Court hereby:

(1) DENIES Defendants' Motion to Dismiss plaintiff's first-amended complaint; and

(2) DISMISSES, without leave to amend, plaintiff's second claim for relief.

All parties are also hereby instructed to attend a status conference on Tuesday, November 20, 1990 at 8:45 a.m. Both parties shall file a status conference statement two weeks prior to this date. These statements should address the desirability of this Court's suggestion that the blanket policy claim be severed out for a separate trial and should contain a brief discussion on the

progress of discovery and discovery problems remaining to be resolved.

IT IS SO ORDERED.

---

**10.** Having denied defendants' motion to dismiss plaintiff's equal protection claims, the Court necessarily refuses to dismiss plaintiff's *Bivens* claim, since defendants contend that this claim was insufficient because her constitutional claims were insufficient, and did not advance other grounds in favor of dismissing this claim.