**John DOE, Plaintiff,**

v.

**Leon J. SCHACHTER, Director of Directorate for Industrial Security Clearance Review, Defense Legal Services Agency, for the U.S. Department of Defense; Richard Cheney, Secretary of Defense, U.S. Department of Defense; and Does 1 to 10, inclusive, Defendants.**

No. C–92–2481 MHP.

United States District Court,
N.D. California.

Oct. 22, 1992.

Jerry H. Langer, San Francisco, Cal., for plaintiff.

Paul Solon, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., Vincent M. Garvey, Stephen G. Harvey, Attys., Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## OPINION

PATEL, District Judge.

Plaintiff, an employee of a defense contractor, filed this action against the Department of Defense ("DOD") seeking declaratory and injunctive relief against revocation of his security clearance. Defendants move to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6). After carefully considering the parties' submissions and arguments, the court enters the following order and opinion.

## BACKGROUND

Plaintiff, a research specialist employed by the same defense contractor for 25 years, has held a "secret" security clearance since July 17, 1957. Prior to November 27, 1991, plaintiff's security clearance had been routinely renewed.

Plaintiff has lived in the same apartment complex since 1960. On the morning of August 23, 1990 a witness reported to the police that she had seen plaintiff in her carport with no pants on. Later that day, when police officers questioned plaintiff about the allegations, he admitted that he had appeared in his apartment complex's carport *sans* pants.

Subsequently, plaintiff appeared in the County's Municipal Court where he pleaded not guilty to one misdemeanor count of indecent exposure. The court referred the matter to the County Mental Health Division. The Mental Health Division evaluated plaintiff and concluded that "there is no evidence of psychiatric disorder," and that plaintiff is not "a danger to the community." Based on this evaluation and a subsequent County Probation Department report which confirmed that plaintiff "is not criminally-oriented, is highly remorseful and cooperative," and would not "recidivate during the course of therapy," the court admitted plaintiff to eighteen months of Mental Health Diversion.[1]

---

1. Upon successful completion of the Diversion Program in December 1992, plaintiff's case will be dismissed and all references to the matter expunged from the criminal justice system. To date, plaintiff has complied with all the requirements of the Diversion Program.

In March 1991 the Directorate for Industrial Security Clearance Review ("DISCR") sent a "Statement of Reasons" to plaintiff, informing him that based on the indecent public exposure incident, the DISCR was unable to find that it was clearly consistent with the national interest to continue to grant him access to classified information. The DISCR recommended that the case be submitted to an Administrative Judge to determine whether plaintiff's security clearance should be revoked. Pursuant to criteria set forth in Department of Defense Security Clearance Directive 5220.6 ("Directive 5220.6"), the DISCR based its recommendation on criterion H (criminal and/or sexual misconduct), criterion I (acts of omission or commission that indicate poor judgment, unreliability, or untrustworthiness), and criterion K (subject to coercion, influence, or pressure that may cause action contrary to the national interest).[2] *See* Motion to Dismiss, Ex. B (Statement of Reasons) & Ex. C at 6 (Directive 5220.6).

Plaintiff responded to the DISCR's "Statement of Reasons" by admitting the factual allegations set forth in support of the aforementioned criterion, but maintained that these facts neither warranted a finding of the criterion nor a finding that his security clearance should be revoked. In November 1991 the matter was heard in a one day hearing conducted by a DISCR Administrative Judge who found against plaintiff on all criterion and concluded: "it is not clearly consistent with the national interest to grant or continue a security clearance for [plaintiff]." Motion to Dismiss, Ex. A at 6 (Determination of Administrative Law Judge). Plaintiff filed a timely appeal with the Department of Defense Appeal Board which affirmed the decision to revoke plaintiff's security clearance.

Plaintiff brings the present action seeking declaratory and injunctive relief from the decision to revoke his security clearance. Specifically, plaintiff sets forth five separate claims, alleging that the revocation of his security clearance: (1) violates his right to substantive due process of law, (2) violates his constitutional right against arbitrary denial of employment, (3) violates his constitutional right against self-incrimination, (4) violates his constitutional right to privacy, and (5) was an abuse of discretion in violation of the DOD's own regulations. Defendants filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(1) & 12(b)(6).

## LEGAL STANDARD

In his complaint, plaintiff asserts that jurisdiction in this court is proper under the Administrative Procedures Act, 5 U.S.C. § 551 et seq.; under the court's general federal question jurisdiction, 28 U.S.C. § 1331; under 28 U.S.C. §§ 1346 & 1361; and under the First and Fifth Amendments of the Constitution. Defendants argue that plaintiff's claim must be dismissed because federal courts lack jurisdiction to review an executive decision to revoke a security clearance. As for plaintiff's first four claims, defendants maintain that none states a colorable constitutional claim. Accordingly, defendants urge this court to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6).

 A party seeking to invoke a federal court's jurisdiction has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936); *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. Where there is a facial attack on the court's subject matter jurisdiction—

---

**2.** The Department of Defense Directive No. 5220.6 implements Executive Order 10865, "Safeguarding Classified Information Within Industry," signed by President Dwight D. Eisenhower on February 20, 1960. The Directive is codified at 32 C.F.R. §§ 154 & 155.

that is, the defendant argues that the allegations of jurisdiction included in the complaint fail on their face to establish that jurisdiction exists—the plaintiff enjoys safeguards akin to those applied when a Rule 12(b)(6) motion is made. *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D.Cal. 1989). The factual allegations made in the complaint are presumed to be true, and the motion is granted only if the plaintiff does not set forth the elements necessary for subject matter jurisdiction. *Id.* After construing the allegations in the light most favorable to the plaintiff, a complaint will be dismissed for lack of subject matter jurisdiction if: (1) the claim does not "arise under" federal law or the Constitution; (2) there is no case or controversy; or (3) the cause of action is not described in any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1962).

A motion to dismiss for lack of subject matter jurisdiction may also be a "speaking motion" in which the defendant challenges the veracity of the jurisdictional facts underlying the plaintiff's complaint. In such a case a different standard obtains:

> Faced with a factual attack on subject matter jurisdiction, "the trial court may proceed as it never could under Rule 12(b)(6).... No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."

*Thornhill Pub. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

■ A court deciding a motion to dismiss for lack of subject matter jurisdiction, therefore, must distinguish between a *facial* attack, under which the nonmoving party is entitled to the same protections it would receive in defending against a motion to dismiss for failure to state a claim, and a *factual* attack, under which the court considers matters outside the pleadings to resolve disputed jurisdictional facts. *See Osborn v. United States*, 918 F.2d 724,

728–730 (8th Cir.1990). In other words, where the jurisdictional issue is separable from the merits of the case, the court may hear evidence regarding jurisdiction, resolve existing factual disputes, and rule on that issue. *Thornhill*, 594 F.2d at 733. However,

> where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.

*Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill*, 594 F.2d at 733–35); *see also Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987) (where the jurisdictional issue and the merits are intertwined, the court must apply the summary judgment standard in disposing of the motion to dismiss for lack of subject matter jurisdiction).

■ A 12(b)(6) motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987).

## DISCUSSION

Even after construing the complaint in the light most favorable to plaintiff, the

first three claims can be disposed of swiftly. The fourth claim—the allegation that by revoking his security clearance, the DOD violated plaintiff's constitutional right to privacy—causes this court some pause, but for the reasons articulated below, it too must be dismissed. The allegation comprising the fifth claim, that the DOD violated its own regulations by failing to consider mitigating factors before revoking plaintiff's security clearance, presents an issue of first impression in this Circuit.

### I. *Plaintiff's Constitutional Claims*

■ Under *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), federal courts have jurisdiction over colorable constitutional claims challenging security determinations made under authority of Congress. *Id.* at 603–604, 108 S.Ct. at 2053–2054. Since *Webster* the Ninth Circuit has on at least three occasions reviewed constitutional claims regarding security related employment decisions where the authority to make such decisions was rooted not, as in *Webster,* in an Act of Congress, but, as in the instant case, in an Executive Order. *See Dorfmont v. Brown,* 913 F.2d 1399 (9th Cir.1990) (procedural and substantive due process claims), *cert. denied,* —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991); *High Tech Gays v. Defense Ind. Sec. Clearance Off.,* 895 F.2d 563 (9th Cir.1990) (equal protection and First Amendment claims), *reh'g denied, en banc,* 909 F.2d 375 (1990); *Dubbs v. C.I.A.,* 866 F.2d 1114 (9th Cir.1989) (equal protection claim). Defendants rely on Judge Kozinski's concurring opinion in *Dorfmont* to suggest that it is an "open question" whether federal courts may properly hear constitutional claims against defendants whose authority to make security decisions derives not from congressional legislation, but by delegation from the President. *See Dorfmont,* 913 F.2d at 1404–1405 (Kozinski, J., concurring). Judge Kozinski's con-

curring opinion notwithstanding, this court has reviewed the decisions in *Dorfmont, High Tech Gays,* and *Dubbs,* and concludes that, as a jurisdictional matter, this Circuit views constitutional challenges raised under presidential authority to be no different from such challenges raised under congressional legislation.[3] Having determined that jurisdiction is proper, the court now considers defendants' argument that plaintiff's constitutional claims are facially invalid.

■ Plaintiff's first two claims assert that the security clearance revocation: (1) violates his substantive due process rights because the criteria used to make security clearance decisions is vague and overbroad, and (2) infringes upon his right against arbitrary denial of employment. Defendants maintain that *Dorfmont* requires dismissal of both these claims. The court agrees. In *Dorfmont,* the plaintiff was challenging defendants' predecessors in an action strikingly similar to the instant one. After working on defense contracts for Hughes Aircraft, plaintiff's security clearance was revoked when it was discovered that she had sent company data to an inmate serving a life term in federal prison. She raised precisely the same two arguments as plaintiff raises in his first two causes of action. *Dorfmont* held that individuals whose security clearances have been revoked cannot bring due process claims because "no one has a right to a security clearance." *Dorfmont,* 913 F.2d at 1403 (quoting *Dept. of the Navy v. Egan,* 484 U.S. 518, 528, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988)). As for the allegedly arbitrary denial of employment, the court explained: "[t]he ability to pursue such employment stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." *Id.* Plaintiff offers no grounds upon which *Dorfmont* can be distin-

---

3. At least one district court in this Circuit has come to the same conclusion. On remand in the *Dubbs* case, the government argued that the court should be extremely deferential to executive decisions affecting national security. Judge Lynch responded that "such deference to Executive Branch decisions does not require the Judiciary to abdicate *its* authority under Article III to decide whether or not an individual's right[s] ... under the Federal Constitution ha[ve] been violated." *Dubbs v. C.I.A.,* 769 F.Supp. 1113, 1116 n. 3 (N.D.Cal.1990).

guished. Indeed, there are none. Therefore, this court dismisses the first two causes of action because they fail to state claims upon which relief can be granted.

▮▮▮▮ Plaintiff's third claim, that revocation of his security clearance violated his constitutional right against self-incrimination, is wholly without merit. The factual basis undergirding the allegation is that the DOD agent who obtained information from plaintiff regarding the indecent exposure incident did not provide him with *Miranda* type warnings. However, it is well established that *Miranda* safeguards are triggered only when a person is subject to custodial interrogation. *See, e.g., Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (*Miranda* protections available when detainee is subject to treatment that renders him "in custody" for practical purposes). Plaintiff alleges no facts to support an inference that he was taken into custody or otherwise deprived of his freedom. Moreover, even if plaintiff were entitled to a type of *Miranda* admonition, the Constitution would only bar the government from using his incriminating statements in a criminal proceeding in which he were the defendant. *See Allen v. Illinois*, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296 (1986). Needless to say, the revocation of a security clearance is a wholly civil proceeding.[4] Accordingly, the court dismisses plaintiff's third cause of action.

▮▮▮▮ Plaintiff's final constitutional claim, set forth in his fourth cause of action, maintains that the revocation of his security clearance violated his constitutional right to privacy. In his Opposition plaintiff argues that his security clearance was revoked because of sexual conduct that took place in the privacy of his own home. Opposition at 18. In his Complaint he al-

leges that during the administrative revocation hearing, he stated that his sexual activities took place mostly in the privacy of his own home and that only "sometimes" would he be prone to public indecency. Complaint ¶ 30. If these assertions encompassed the entirety of plaintiff's allegations, the court would face the delicate question of whether a security clearance revocation based on private sexual activity in the home offends an individual's constitutional right to privacy.

This weighty question, however, can wait for another day, for plaintiff acknowledges that when he answered the DISCR's "Statement of Reasons," he admitted the factual allegations set forth in support of criterion H, I, and K of DOD Directive 5220.6. *See* Complaint ¶ 11. The facts supporting criterion K (subject to coercion, etc.)—which according to the face of his complaint plaintiff does not deny—include the following: "you committed, in open or public places, acts of sexual misconduct on a virtually nightly basis, from approximately 1976 to at least August 22, 1990." Motion to Dismiss, Ex. B at 1. It was on this basis that the DOD revoked plaintiff's security clearance, not on the basis of sexual conduct that took place in the privacy of his home. *See* Motion to Dismiss, Ex. A at 2, 3, & 5. For this reason, the court need not address the extent to which the Constitution protects private sexual activity from government interference in the security clearance context. This case involves public acts of sexual conduct. Whatever constitutional right there may be to private sexual activity, there is no fundamental right to engage in the type of public activity which resulted in the revocation of plaintiff's security clearance. *See Planned Parenthood v. Casey*, —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). There-

4. Plaintiff also suggests that 32 C.F.R. § 155.6(b) requires that the DOD warn employees that they have a right not to answer incriminating questions, and the DOD's failure to do so in this case rises to the level of a constitutional violation. This argument is feeble. The relevant passage of the regulation provides that when a person is being investigated by the DISCR, she "may elect on constitutional or other grounds not to com-

ply." 32 C.F.R. § 155.6(b). This language does not oblige the DOD to provide *Miranda* warnings for the simple reason that there is no constitutional right to such an instruction outside the context of custodial interrogation. Furthermore, the next sentence of the regulation provides that failure to answer investigatory questions may preclude DISCR from making the finding necessary to grant a security clearance.

fore, plaintiff's fourth cause of action also raises no colorable constitutional claim.

## II. *Plaintiff's Claim That the DOD Did Not Follow its Own Regulations In Revoking the Security Clearance*

Plaintiff claims in his fifth cause of action that during the adjudication of his security clearance revocation, the DISCR failed to consider the mitigating factors set forth in 32 C.F.R. Part 154, Appendix H. As a result the revocation is allegedly arbitrary, capricious, and an abuse of discretion in contradiction of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). Defendants argue that this is actually an attack on the merits of the DISCR's determination and under *Dorfmont*, a federal court has no jurisdiction to review the merits of an executive decision to revoke a security clearance. *Dorfmont*, 913 F.2d at 1401. The bone of contention here is at once subtle and elusive: would judicial review of the DISCR's alleged non-compliance with its own regulations in this instance necessarily involve a review on the merits of the decision to deny the security clearance? If the answer is yes, *Dorfmont* clearly controls: this court has no authority to review the merits of the DISCR's decision to lift a security clearance. *Id.* However, to the extent that an allegation that the DISCR violated its own regulations does not require a review on the merits of the DISCR's decision, this court has jurisdiction to hear such a claim. Before addressing this issue, a review of the relevant statutory and decisional law is in order.

The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 501–706, provides that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof." *Id.* § 702. This presumption of reviewability is not absolute. The provisions of the APA regarding judicial review are applicable "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Id.* § 701(a). Since Congress has not expressly prohibited judicial review of DOD security clear-

ance revocations, the focus of the court's inquiry in this case is the second exception, section 701(a)(2).

The prohibition on judicial review for "agency action committed to agency discretion by law" is "a very narrow exception." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). As the *Volpe* court explained, the APA's legislative history indicates that section 701(a)(2) only applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " *Id.* (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). This statement offers courts attempting to apply the exception little guidance because if there were "no law to apply" in a case, there would be no grounds on which to set aside the agency's action. In other words, if there were "no law to apply," the action in question would obviously survive judicial review on the merits anyway. Under this reading section 701(a)(2) is superfluous, for the APA would generate the same result whether or not the section was applied.

In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court again attempted to shed light on the cryptic language of section 701(a)(2). In *Heckler* a group of death row inmates challenged the Food and Drug Administration's decision not to initiate enforcement proceedings against state authorities who were using certain drugs to administer the death penalty in alleged violation of the Food, Drug, and Cosmetic Act (FDCA). The Court was required to decide if the FDA's decision not to undertake enforcement proceeding was subject to judicial review under the APA. The Court noted that under section 701(a)(2):

[E]ven where Congress has not affirmatively precluded review, *review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.* In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to

the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for abuse of discretion. *Id.* at 830, 105 S.Ct. at 1655 (emphasis added). In light of this interpretation, the Court held that because the statute in question provided no substantive standards on which a court could base its review, the FDA's decision not to take the requested enforcement actions was not subject to judicial review under the APA. *Id.* at 837–38, 105 S.Ct. at 1659. In an aside which has bearing on the instant case, the Court mentioned that it was "leaving to one side the problem of whether an agency's rules might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce...." *Id.* at 836, 105 S.Ct. at 1658.[5]

The Court had occasion to grapple with the pertinence of section 701(a)(2) in the security clearance context in *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). There the Court held that the CIA's decision to terminate an employee, although reviewable for Constitutional defects, was not reviewable under the APA because such decisions are "committed to agency discretion by law." *Id.* at 600, 108 S.Ct. at 2052. The statute under consideration in *Webster*, section 102(c) of the National Security Act (NSA), allowed termination of an agency employee whenever the Director "shall deem such termination necessary or advisable in the interests of the United States." *Id.* Such language, the Court concluded, "exudes deference to the Director, and appears to ...

foreclose the application of any meaningful judicial standard of review." *Id.* Once again, although the Court did not specifically reach the issue, it observed that "the Agency's failure to follow its *own regulations* can be challenged under the APA...." *Id.* at 602 n. 7, 108 S.Ct. at 2053 n. 7 (emphasis in original).[6]

The Ninth Circuit found *Webster* controlling in *Dubbs v. C.I.A.*, 866 F.2d 1114 (9th Cir.1989), a case challenging the CIA's denial of a security clearance under the "arbitrary and capricious" standard of section 706(2)(A) of the APA. After reviewing the Court's decision in *Webster*, the Ninth Circuit explained:

Here, the Executive Order that gives the Director the power to grant or deny security approval also "appears to ... foreclose the application of any meaningful judicial standard of review." Executive Order No. 10,865 § 2 provides that security approval of industrial employees must be "clearly consistent with the national interest." For the purposes of section 701(a)(2), we see *no meaningful basis for distinguishing* this Executive Order from the statute construed in *Webster*. Simply put, neither provides any law for a court to apply.

*Id.* at 1121 (citations omitted). However, the *Dubbs* court explicitly noted that the plaintiff was not claiming that the CIA had violated its own regulations in denying the security clearance. "If [plaintiff] had made such a claim, the regulations themselves may arguably constitute the 'law' which a court could apply in reviewing the agency action under the arbitrary and capricious standard of section 706(A)(2)." *Id.* at 1121 n. 9. The court went on to observe that "[t]he Supreme Court recognized this in *Webster* and expressly refrained from

---

5. It is also worth noting that the *Heckler* court differentiated between agency action and inaction. "[W]hen an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers." 470 U.S. at 832, 105 S.Ct. at 1656 (emphasis in original).

6. The Court of Appeals had reasoned that an agency must follow its regulations, and judicial review is available for claims that agency regulations have been violated. *Doe v. Casey*, 796 F.2d 1508, 1519 (D.C.Cir.1986). The appellate court, however, concluded that the CIA regulations did not limit the Director's discretion and provided "no independent source of procedural or substantive protections." *Id.* at 1520. Because the CIA prevailed on this ground below, it did not seek review of the question.

holding that such a claim would be unreviewable." *Id.; see also Doe v. Cheney,* 885 F.2d 898, 904 n. 4 (D.C.Cir.1989) (approvingly noting that "as *Dubbs* and *Webster* suggest, had Dubbs' claims and *Webster* Doe's non-constitutional claims been based on the premise that the CIA violated its own regulations, those claims might well have been reviewable.").

*Webster* was also the guiding light in *Dorfmont v. Brown,* 913 F.2d 1399 (9th Cir.1990) where, as set forth above, it was determined that a district court has no authority to review the merits of DOD's decision to revoke a security clearance. *Dorfmont* also relied on *Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) where the Supreme Court held that the decision to grant or revoke a security clearance is committed to the discretion of the President by law, and therefore, the Merit Systems Protection Board (MSPB) had no authority to review an executive decision to lift a security clearance. *Id.* at 527, 108 S.Ct. at 824. The *Dorfmont* court reasoned that "the logic of [*Egan* ] precludes judicial review [here] as well." *Dorfmont,* 913 F.2d at 1401.[7]

In *Dorfmont* the plaintiff attacked the merits of the decision to lift her security clearance by arguing, *inter alia,* that the hearing examiner's findings were contrary to the evidence; and that the findings were contrary to DOD Directive 5220.6 § F.3, which provides that a security clearance will be continued only if "clearly consistent with the national interest." In interpreting plaintiff's argument that the findings violated DOD Directive 5220.6 § F.3 as an attack on the merits, the court opined:

> We recognize that federal courts normally have jurisdiction over claims that a federal agency did not follow one of its own regulations. [Plaintiff's] claim that the examiner's determinations are contrary to section F.3 is, superficially at least, a claim of this type. Nonetheless, a federal court cannot hear this type of challenge. Section F.3 provides that a security clearance may be continued only if "clearly consistent with the national interest." *Judicial review of the Defense Department's compliance with this directive would perforce involve a review on the merits of the decision to lift the security clearance.*

*Dorfmont,* 913 F.2d at 1402 n. 1 (citations omitted) (emphasis added).

The *Dorfmont* court prohibited judicial review in security clearance cases where a litigant challenges the merits of the DISCR's decision or challenges a regulation which involves the ultimate question of whether granting a security clearance is consistent with the national interest. The instant case does not fall within *Dorfmont*'s ambit. Here, plaintiff, unlike the plaintiff in *Dorfmont,* is not alleging that the DISCR failed to comply with DOD Directive 5220.6 § F.3, but rather that the DISCR failed to consider certain mitigating factors in violation of 32 C.F.R. Part 154, Appendix H. Defendants argue that as in *Dorfmont,* review of compliance with the rules regarding the consideration of mitigating factors would necessarily involve a review on the merits of the decision to lift plaintiff's security clearance. The court does not agree. Plaintiff is not asking the court to decide whether the findings at his hearing were contrary to the agency's rule that security clearances should be revoked if doing so is consistent with the national interest. The allegation is significantly narrower, namely, whether the Administrative Law Judge followed the agency's procedures requiring consideration of mitigat-

---

7. In *Egan,* the Court explained that in the "sensitive and inherently discretionary" area of granting a security clearance, the authority to protect information falls on the President as head of the Executive Branch and as Commander in Chief. 484 U.S. at 527, 108 S.Ct. at 824. Moreover, security decisions of this kind are speculative because they rest on the ability of the decisionmaker to predict an individual's future behavior. For these reasons, the Court held that outside, nonexpert bodies cannot review the merits of an executive decision to revoke a security clearance. *Id.* at 529, 108 S.Ct. at 825. However, the Court acknowledged, and the government conceded, that the MSPB did possess the reviewing authority to determine whether the Navy had satisfied the requisite procedural protections before removing the security clearance. *Id.* at 523, 108 S.Ct. at 822.

ing factors before arriving at his decision. Reviewing an allegation of this nature does not require this court to assess the merits of the DISCR's decision. The inquiry would be limited to reviewing the underlying record and determining if in fact the agency complied with the relevant regulations.

■■■ As explained above, *Webster, Dubbs,* and *Dorfmont* all recognize that when a plaintiff alleges that an agency violated its own regulations, the regulations themselves may constitute the "meaningful standard against which to judge the agency's exercise of discretion." *Heckler,* 470 U.S. at 830, 105 S.Ct. at 1655. The regulations under scrutiny in the instant case provide such a standard. The introduction to Appendix H of 32 C.F.R. Part 154, entitled "Adjudication Policy," explicitly provides that "Any [security clearance] determination *must* include a consideration of ... the circumstances listed under ... Mitigating Factors." 32 C.F.R. Part 154, App. H (emphasis added). Given this mandatory language, the DISCR must abide by this rule, and any allegation that they failed to do so is properly reviewable by a federal court.[8] That courts have jurisdiction to hear such a claim makes eminent sense, for even when an agency's action is "committed to agency discretion by law," the agency doesn't enjoy the discretion to defy its own regulations. For instance, it appears that this court would have the authority under the APA to review an allegation that the DISCR based its security clearance revocation solely upon personal vindictiveness, a criteria which, needless to say, is found nowhere in the applicable regulations. *See Webster,* 486 U.S. at 610, 108 S.Ct. at 2057 (Scalia, J., dissenting). Nor can it be denied that notwithstanding

the DISCR's broad discretion, the court could properly review a claim that the DISCR did not send a "Statement of Reasons" to an individual before revoking her security clearance. *See* 32 C.F.R. § 155.-7(c) ("security clearance shall not be denied or revoked unless the applicant has been provided with a written Statement of Reasons."). That the DISCR doesn't enjoy the discretion to abandon its own regulations can also be gleaned from the introduction to Appendix H which states that the mitigating factors contained therein reflect factors of: ·

seriousness, recency, frequency, motivation, etc., to common situations and types of behavior encountered in personnel security adjudications, and should be followed whenever an individual case can be measured against this policy guidance. Common sense may occasionally necessitate deviations from this policy guidance, *but such deviations should not be frequently made and must be carefully explained and documented.*

32 C.F.R. Part 154, Appendix H (emphasis added).

The Supreme Court has explicitly held that "regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature." *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957). In *Dulles* the plaintiff argued that his discharge from the Foreign Service was effectuated in violation of regulations promulgated by the Secretary of State. One of the regulations provided that the decision to discharge an employee from the Department of State "shall be reached after consideration of the complete file, argu-

---

8. The regulations regarding DOD security clearance revocations contain other examples of binding language. *See, e.g.,* 32 C.F.R. § 155.6(d) ("[e]ach personnel security determination *shall* include consideration of the following factors....."). The salient feature of this language is that by its own terms, it is non-discretionary. For an example to the contrary, it's instructive to see how the district court in *Dubbs* (upon remand) reviewed plaintiff's contention under the APA that the C.I.A. violated its own guide-

lines. *Dubbs,* 769 F.Supp. at 1119-21. The regulation in question, DCID 1/14, provided that "agencies *may establish* such additional security steps as *may be deemed necessary* and appropriate to ensure that effective security is maintained." *Id.* at 1119 (emphasis added). Because such language provides no meaningful standard to inform judicial review, the court correctly held that the claim was precluded by section 701(a)(2) of the APA. *Id.* at 1121.

ments, briefs, and testimony presented." *Id.* at 387, 77 S.Ct. at 1164 (quoting section 393.1 of the relevant regulation). In sustaining plaintiff's contention and affirming the power of federal courts to review an agency's actions to ensure that it has followed its own regulations, the Court explained:

> [T]he necessary effect of section 393.1 was to subject the exercise of [the agency's] authority to . . . the procedural requirements that such cases must be decided 'on all the evidence' and 'after consideration of the complete file, arguments, briefs, and testimony presented.' . . . [T]he Secretary . . . could not, so long as the Regulations remained unchanged, proceed without regard to them.

*Id.* at 388, 77 S.Ct. at 1165. As to the issue of whether plaintiff has stated a legally sufficient claim which this court has the jurisdiction to consider, the court finds that *Dulles* is controlling.

■■■■ Finally, defendants argue that the Administrative Judge did in fact consider mitigating factors but determined that none were relevant to plaintiff's case. To buttress this claim, defendants have appended to their Motion to Dismiss, the Determination of the Administrative Judge and the Appeal Board determination to. *See* Motion to Dismiss, Exs. A & D. By arguing that the record of the underlying adjudication contradicts plaintiff's claim that the DISCR did not consider mitigating factors, defendants invite this court to consider evidence outside the pleadings and in so doing, compel this court to convert their Motion to Dismiss into a Motion for Summary Judgment.[9] Rule 12(b) of the Federal Rules of Civil Procedure specifically provides:

> If, on a motion . . . to dismiss for failure . . . to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The standards for summary judgment are embodied in the trilogy of cases decided by the Supreme Court in 1986. Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") Moreover, the

---

**9.** Because the court is treating defendants Motion to Dismiss as a Motion for Summary Judgment, the court need not reach defendants' argument that they have successfully challenged the jurisdictional facts underlying plaintiff's complaint, and therefore, this court has no jurisdiction to hear the case. It should be noted, however, that in this case there are no jurisdictional facts in dispute. A factual attack on jurisdiction usually involves a claim such as the failure to exhaust administrative remedies, or noncompliance with the applicable statute of limitations. In such cases, no presumptive truthfulness attaches to the plaintiff's allegations and a court must resolve the contested jurisdictional facts to determine whether it can properly hear the case. *See e.g., Osborn v. United States,* 918 F.2d 724, 728 (8th Cir.1990) (district court properly considered the whole record and then decided that plaintiffs' claim had accrued more than two years before its filing and therefore plaintiffs failed to comply with the applicable statute of limitations which was the jurisdictional prerequisite to the case). By arguing that the DISCR did in fact consider the mitigating factors set forth in 32 C.F.R. Part 154, Appendix H, and submitting evidence to that effect, defendants are not challenging jurisdictional facts, but rather, are attacking the merits of plaintiff's claim. Accordingly, it is appropriate to resolve the matter under applicable summary judgment standards. *See Trentacosta v. Frontier Pac. Aircraft Indus.,* 813 F.2d 1553, 1558 (9th Cir.1987) (applying summary judgment standard when jurisdictional challenge went "directly to the merits" of plaintiff's claim).

nonmoving party may not rely on the allegations contained in the complaint, but must present significant probative evidence showing there is a genuine issue for trial. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

 Having decided that this court has jurisdiction to review plaintiff's complaint, and having converted defendants' Motion to Dismiss into a Motion for Summary Judgment, plaintiff's fifth claim can now be properly addressed. The allegation that the DISCR failed to follow its own regulations by not considering mitigating factors, though a legally cognizable claim under Rules 12(b)(6) and 12(b)(1), is not supported by the administrative record which defendants have submitted in support of their motion. The burden is therefore on the plaintiff to "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff has failed to do so.

A close examination of the Administrative Judge's written findings demonstrates that after considering the relevant mitigating factors, he determined that none were applicable to plaintiff, either with respect to the charge of sexual misconduct or criminal misconduct. *See* Motion to Dismiss, Ex. A at 3. With respect to whether plaintiff reformed himself, the Administrative Judge discussed and specifically concluded that the plaintiff had failed to prove that he had reformed. On appeal, plaintiff argued that the Administrative Judge failed to consider these same mitigating factors, and the Appeal Board rejected the argument. *See* Motion to Dismiss, Ex. D at 3–5.

Therefore, the DISCR made a finding based upon the evidence that none of the mitigating factors relating to criminal conduct or sexual misconduct set forth in 32 C.F.R. Part 154, Appendix H, applied to plaintiff's case. Plaintiff argues that under the Administrative Procedures Act and the relevant decisional law, this court has jurisdiction to review an allegation that the DOD has not followed its own regulations in revoking a security clearance. As explained at some length above, plaintiff is correct. However, plaintiff has failed to

bear his burden on the converted Motion for Summary Judgment. In his Opposition, plaintiff merely re-asserts the bald allegation contained in his complaint, namely, that the DISCR failed to consider the mitigating factors required under 32 C.F.R. Part 154, Appendix H. In light of the record of the underlying adjudication submitted by defendants, plaintiff must do more than this to survive a Motion for Summary Judgment. For this reason, and only for this reason, defendants' motion is granted.

CONCLUSION

Having converted defendants' Motion to Dismiss into a Motion for Summary Judgment, the court rules that there is no genuine issue of material fact in dispute. Accordingly, defendants' motion is GRANTED.

IT IS SO ORDERED.