**Robert M. BEATTIE, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 89–1526–C.

United States District Court, D. Kansas.

March 15, 1991.

---

James S. Phillips, Jr., Phillips & Phillips, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion for summary judgment (Dk. 22) and motion to dismiss (Dk. 48). Plaintiff brings this civil rights action alleging certain of his constitutional rights

were violated when he was denied access to the Air Force One project area. Defendant argues in support of summary judgment that the plaintiff either was without constitutional rights or was not denied them. Defendant also seeks to dismiss the plaintiff's suit for mootness as the plaintiff quit his employment as a fire fighter at Boeing Military Airplane Company (BMAC). The court will proceed to the motion for summary judgment as the defendant's cursory arguments for mootness appear flawed.

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and judgment can be entered for the movant as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. See *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir. 1990).

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Rule 56 does not bar a court from entertaining motions for summary judgment before discovery is completed. *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985). Under Rule 56(f), a litigant may file an "affidavit explaining why he or she cannot present facts to oppose the motion." *Dreiling v. Peugeot Motors of America, Inc.*, 850 F.2d 1373, 1376 (10th Cir.1988). An affidavit is not sufficient unless the affiant shows how a continuance would provide the facts necessary to create genuine issues of material fact. *Weir*, 773 F.2d at 1083. Plaintiff originally responded that discovery was incomplete. The attached affidavit did not explain why the additional discovery would be important to any of the pending motions. Plaintiff has filed a supplemental brief (Dk. 60) referring to some of this additional discovery without renewing his argument for more discovery. The court is satisfied that the defendant's motion for summary judgment is ripe for decision.

For purposes of this motion, the court finds the following facts to be uncontroverted:

1. In 1986, Boeing Military Airplane Company (BMAC) entered into a contract with the United States Air Force to build two aircraft to replace the President's existing aircraft known as Air Force One.

2. Entrance to the building area of these two aircraft is controlled and supervised. Unescorted permission to enter is granted by the Air Force, and escorted permission is granted by Boeing.

3. Plaintiff, Robert M. Beattie, was employed by BMAC as a fire fighter. Plaintiff worked there from 1984 until June of 1990 when he resigned. On different occasions, plaintiff entered the Air Force One area to care for injured workers and issue permits for certain potentially hazardous work.

4. In February of 1989, plaintiff attempted to enter the Air Force One area to check the fire valves but was told that his name was not on the list of authorized persons. When asked by plaintiff, his superiors at BMAC explained that a criteria for access to the area was "unquestioned loyalty to the United States" and that his name was removed because of his political activities.

5. Plaintiff then filed a grievance against BMAC based on these events. On March 3, 1989, plaintiff and BMAC settled the grievance agreeing that BMAC would request the Air Force to determine whether plaintiff would be allowed access to the area. Plaintiff executed the following document on the same day:

> I, Robert M. Beattie, acknowledge the possibility exist [sic] that through my efforts to obtain an Air Force One clearance, that questions could arise from the Government's investigation jeopardizing my ability to retain a secret clearance. I further understand that a secret clearance is required by contract with Boeing Military Airplanes and United Plant Guard Workers of America, Local 255 to maintain employment as a member of the Boeing Fire Department.
>
> With these things in mind, I hereby request that the Company submit my name to be processed for an Air Force One clearance. In doing this I am accepting full responsibility of the outcome and do release the International Union United Plant Guard Workers of America (UPGWA) and specifically Local 255, Wichita, Kansas of any liability in the event that should occur.

6. Kerry Crisp, manager of security and fire protection at BMAC, wrote Capt. Barry Graham at the Wright–Patterson Air Force Base in Ohio. Mr. Crisp acknowledged that BMAC had adjudicated escorted entries in the past according to the terms of the contract and security administration requirements, but he believed that the instant matter had unique circumstances and that the Air Force was better suited to make an informed determination. Mr. Crisp set forth the circumstances in the letter as follows:

> This case concerns a Mr. Robert M. Beattie Jr. He is a Boeing Military Airplanes Fireman and his job includes facilities fire inspections and special welding permits which would require his periodic entry into the AF–1 Area. *The special circumstances referred to in paragraph 1 of this letter concern a report to the Defense Industrial Security Clearance Office in accordance with Industrial Security Manual, paragraph 6.b(9).* This report was prompted by our learning of Mr. Beattie's making contact with representatives from designated countries and failing to report that contact. The findings of any investigation resulting from this report could influence an access decision. We are not; however, privy to this information therefore are unable to make an informed determination in this case.

(emphasis supplied). Mr. Crisp included information gathered from their local investigation to assist the Air Force in its determination.

7. In consideration of the access issue, Captain Graham reviewed Boeing's security folder on plaintiff, a copy of a personnel records check, a copy of a security violations check, and a copy of a report filed by Boeing with the Defense Investigative Services (DIS). He also spoke with Jim Barton, Nat Addleman, Kerry Crisp, and Carol

Dickey in regards to the letter written by Mr. Crisp.

8. Two and one-half months later, Lt. Col. Darrell J. Johnson informed BMAC of the Air Force's decision in a letter dated July 27, 1989:

Based on Mr. Beattie's past history, he is not authorized escorted or unescorted access to the VC–25A security area. Further, we are concerned that you didn't disqualify Mr. Beattie based on the report made to the Defense Investigative Service (DIS). Unless the DIS investigation shows otherwise, Mr. Beattie clearly fails to meet paragraphs III.A and III.C of Annex 2 of the Statement of Work. In the future, it is necessary that BMA accomplish adjudication of employee screenings in accordance with the procedures set forth in Annex 2.

9. The DIS report referenced above was made by N.J. (Nat) Addleman, manager of information security at BMAC, and was dated March 24, 1989. Addleman reported:

Individual has had contact with citizen from USSR. In April 1986, individual contacted (by phone) the Soviet Embassy in Washington, D.C. to express personal sympathy on the death of the firefighters at Chernobyl. He was requested to convey this message in writing, which he did. No further contact has been received from the Embassy or sought by the individual. In March of 1987, individual spoke with a Dr. Simon Kechanayli at a conference in Chicago, IL. Individual apologized for a remark made by a local Senator and stated that not everyone from Kansas agreed with the Senator. No further contact has been made with or received from any representatives from designated countries.

Plaintiff does not dispute the accuracy of this report.

10. In response to this report, the Defense Investigative Service (DIS), a separate agency under the Department of Defense, from March 1989 through June 1989, investigated Mr. Beattie's contacts with the Soviet Union and interviewed him, his associates, and his supervisors. The DIS, in its limited role, communicated the results of its investigation to the Directorate for Industrial Security Clearance Review (DISCR), which is part of the Defense Legal Services Agency of the Department of Defense. The DISCR adjudicates security clearances for those employed in private industry which have been referred to it by DIS. The DISCR made a favorable determination concerning plaintiff after reviewing the DIS investigative file. It determined the plaintiff's security clearance at the secret level was consistent with the national interest.

11. The Air Force issued its decision on July 27, 1989, denying plaintiff access to the Air Force One area apparently without knowing of or reviewing the DIS's investigation or the DISCR's favorable determination.

12. The contract between BMAC and the Air Force provides in pertinent part:

2. The contractor must use only personnel who meet the qualifications prescribed in paragraph IIIB(1) for Presidential aircraft. Failure of an employee to meet these qualifications will be a matter between employer and employee. Denial does not allow the employee an appeal under the Industrial Personnel Access Authorization Program.

. . . .

5. Only those persons who are determined to be best suited for such duties consistent with optimum Presidential security will be nominated, selected, assigned, employed, or retained in Presidential Support positions. Nominees must be the most suitably qualified individuals available for consideration and must:

. . . .

b. Be of excellent character and stability with a high degree of maturity, discretion, trustworthiness, professional competence and unquestioned loyalty to the United States.

. . . .

f. Have no personal habits, characteristics, traits, activities or associations which would be the basis for reasonable doubt as to the individual's reliability,

stability, or general suitability for Presidential Support duties.

Paragraph 6b(9) of the Industrial Security Manual requires BMAC to report to the DIS the travel or contact of BMAC employees in or with certain foreign countries.

13. In his affidavit, plaintiff avers that BMAC supervision was promptly told of his contacts with the Soviet Embassy and his later conversation with a Soviet doctor at a conference in Chicago.

14. The Air Force's action denying plaintiff access to Air Force One did not affect plaintiff's job rating, hours of work, or his income. Plaintiff alleges he was denied promotions and harassed by coworkers because of the Air Force's decision. He also offers evidence that his reputation has suffered as a result. Plaintiff states he resigned from Boeing in June of 1990 due to the humiliation and lack of promotional opportunities caused by the denial of access.

■ This case presents a question of subject matter jurisdiction that has not been briefed nor argued by the parties. Parties cannot waive the issue of subject matter jurisdiction, and the court must dismiss a case for the lack of jurisdiction even if the parties fail to bring it to the court's attention. *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1202 (10th Cir.1986). Plaintiff asserts the court has jurisdiction of his suit under 28 U.S.C. § 1331 and 5 U.S.C. § 702. The latter statute is concerned with judicial review of agency action and is expressly subject to other limitations on judicial review. The former statute creates federal question jurisdiction. In the pretrial order, plaintiff articulates the following constitutional claims: denial of plaintiff's right to procedural due process under the Fifth Amendment when he was denied his property interest in employment and/or his liberty interest to pursue his chosen profession without a hearing, denial of his right to substantive due process under the Fifth Amendment when he was subject to arbitrary and capricious action, and denial of his right to freedom of speech and association under the First Amendment when the reasons for the adverse action were protected political activities. The jurisdictional issue is whether this court can review the defendant's decision denying plaintiff access to the Air Force One area.

The Supreme Court in *Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), held that the Merit Systems Protection Board lacked authority to review an executive decision to revoke a security clearance. Circuit courts have construed *Egan* as logically precluding judicial review of these same executive decisions. *Dorfmont v. Brown,* 913 F.2d 1399, 1401 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1104, —— L.Ed.2d —— (1991); *Jamil v. Secretary, Dept. of Defense,* 910 F.2d 1203, 1205–06 (4th Cir. 1990); *Hill v. Department of Air Force,* 844 F.2d 1407, 1409 (10th Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1988).

In *Dorfmont,* plaintiff, an employee with a government contractor, was denied a security clearance after a DISCR investigation. 913 F.2d at 1400. The security clearance was a requirement for plaintiff's position. She appealed the decision through the various levels of the Department of Defense and eventually turned to the federal courts. The Ninth Circuit held that the district court could not review the merits of the department's revocation of plaintiff's security clearance. 913 F.2d at 1401. In the Ninth Circuit's opinion, the case of *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), confirmed that federal courts are without jurisdiction to review the merits of security clearance decisions. 913 F.2d at 1401. The Supreme Court in *Webster* found that the discretion conferred to the Director of the Central Intelligence Agency by statute precluded judicial review of security clearance decisions. 486 U.S. at 601, 108 S.Ct. at 2052.

In *Jamil v. Secretary, Dept. of Defense,* the plaintiff conceded and the Fourth Circuit agreed that the substance of the Defense Mapping Agency's decision to revoke the security clearance of one of its employees was not judicially reviewable. 910 F.2d at 1206. The Tenth Circuit in *Hill* quoted

extensively from *Egan* in support of its conclusion that judicial review was not available on the merits of the Air Force's decision to revoke the security clearance of the plaintiff, a civilian, whose employment depended upon the clearance. 844 F.2d at 1409–1410.

The circuit courts logically extended the reasoning in *Egan* to judicial review because of the compelling statements made by the Supreme Court therein:

The President, after all, is the "Commander in Chief of the Army and Navy of the United States." US Const, Art II, § 2. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant. (Citations omitted).

484 U.S. at 527, 108 S.Ct. at 824. The Court recognized a security clearance decision was a prediction of sorts made by those with the necessary skill, training, and experience:

[I]t is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information....

Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information. For "reasons ... too obvious to call for enlarged discussion," *CIA v. Sims*, 471 U.S. 159, 170, 85 L.Ed.2d 173, 105 S.Ct. 1881 [1888] (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside non-expert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative predic-

tion with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk. The Court accordingly has acknowledged that with respect to employees in sensitive positions "there is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information." *Cole v. Young*, 351 U.S. 536, 546, 100 L.Ed. 1396, 76 S.Ct. 861 [868] (1956). *Egan*, 484 U.S. at 528–529, 108 S.Ct. at 824–825. The decision whether to allow access to the Air Force One area is the same type and quality and requires the same predictive judgment as the decision whether to grant a security clearance. The only distinction appears to be one of degree. An employee with secret security clearance is not necessarily allowed escorted or unescorted access to the Air Force One area. This court concludes it cannot judicially review the merits of the Air Force's decision to deny plaintiff access to this secured area. This court is in no position to second-guess that decision. No jurisdiction exists to entertain such a challenge. See *Williams v. Reilly*, 743 F.Supp. 168, 171 (S.D.N.Y.1990).

As previously set forth, plaintiff makes a number of constitutional attacks against the Air Force's adverse ruling. The courts are unsure whether review is available even when the plaintiff raises the challenges to a constitutional level. The Tenth Circuit noted in *Hill* that "if the statutory constraints imposed in *Egan* can be by-passed simply by invoking alleged constitutional rights, it makes the authority of *Egan* hardly worth the effort." 844 F.2d at 1411. See also *Williams v. Reilly*, 743 F.Supp. at 171–72. But see *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 643 (10th Cir.1990). The Fourth Circuit avoided answering what it called a difficult question and, in rather summary fashion, considered and dismissed the constitutional claims. *Jamil*, 910 F.2d at 1209. The Ninth Circuit pointed out in *Dorfmont*

that jurisdiction may exist over constitutional claims since the Supreme Court had held in *Webster* that courts could entertain colorable constitutional claims unless Congress clearly intended in the statutes to do away with any judicial review. 913 F.2d at 1402.

The plaintiff has couched his constitutional challenges in such terms that reveal they are simply disguised attempts to have this court review the merits of the Air Force's decision. Plaintiff repeatedly characterizes his contacts with a Soviet doctor and the Soviet Embassy as "innocuous" and "innocent." Plaintiff insists the Air Force relied on erroneous and misleading information. Plaintiff is adamant that the Air Force's decision is unreasonable and without justification. How this case got here is another indication of plaintiff's intent. When BMAC denied him access, plaintiff lodged a grievance. Plaintiff agreed to settle his dispute with the union and his employer by having the Air Force decide the issue of his access. Now convinced that the Air Force wrongly decided the issue, plaintiff wants this court's opinion on the matter. Though plaintiff's constitutional claims are thinly veiled requests for judicial review, the court will address them.

## PROCEDURAL DUE PROCESS

■ The protection of procedural due process extends only to those established and recognized property or liberty interests. *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1394 (10th Cir.1988). "[T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■ Though protected by the Constitution, property interests emerge from another source such as state statutes, local ordinances, established rules, or mutually explicit understandings. *Perry v. Sindermann*, 408 U.S. 593, 601–602 n. 7, 92 S.Ct. 2694, 2700 n. 7, 33 L.Ed.2d 570 (1972). A property interest is more than an "abstract need or desire" and more than a "unilateral expectation of it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ The concept of liberty encompasses two interests in a public employment setting: "1) the protection of his good name, reputation, honor, and integrity, and 2) his freedom to take advantage of other employment opportunities." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (quoting *Miller v. City of Mission, Kan.*, 705 F.2d 368 (10th Cir.1983)). Injury to reputation alone will not suffice to trigger due process requirements unless entangled with the loss of a more tangible interest such as employment. *Setliff*, 850 F.2d at 1396. "For an employee to make a successful liberty deprivation claim, in addition to proving one of the above-recognized interests, he must also show that his dismissal resulted in the publication of information which was false *and* stigmatizing." *Conaway v. Smith*, 853 F.2d at 794 (emphasis in original) (citing *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984)).

■ Plaintiff has no constitutionally protected property or liberty interest in his access to the Air Force One area. See *Dorfmont*, 913 F.2d at 1402–04; *Jamil*, 910 F.2d at 1209; *Hill*, 844 F.2d at 1411–12. The Tenth Circuit in *Hill* looked primarily to the reasoning expressed in *Egan* to reject the claim of a property or liberty interest in a security clearance. 844 F.2d at 1407. The Supreme Court there made clear:

It should be obvious that no one has a "right" to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official. The general standard is that a clearance may be granted only when "clearly consistent with interests of the national security." (Citation omitted). A clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. It may be based, to be sure, upon past or

present conduct, but also may be based upon concerns completely unrelated to conduct, such as having close relatives residing in a country hostile to the United States. "[T]o be denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic." *Molerio v. FBI*, 242 US App DC 137, 146, 749 F.2d 815, 824 (1984). *Egan*, 484 U.S. at 528–29, 108 S.Ct. at 824–825. A security clearance is determined upon the "discretionary exercise of judgment by the Executive as to the suitability of the recipient for such access, consistent with the interests of national security." *Hill*, 844 F.2d at 1411. To find a property interest in access to national secrets or a secured area, like the facilities housing Air Force One, would be inconsistent with the principles so clearly enunciated in *Egan*. Whatever expectation that plaintiff had in entering the Air Force One area was unilateral at best and, therefore, could not give rise to a property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

Plaintiff mistakenly relies on *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), to recognize a property or liberty interest in employment affected by denial of a security clearance. The Court expressly decided against addressing those issues in favor of deciding whether the plaintiff could be deprived of certain procedures in the absence of authorization by either the President or Congress. *Id.* at 492, 508, 79 S.Ct. at 1411, 1419. *Greene* does not substantially advance the plaintiff's argument. *Dorfmont*, 913 F.2d at 1404.

For the same reasons that a property interest has been rejected, the circuit courts have not found a liberty interest implicated by the revocation of a security clearance. *Dorfmont*, 913 F.2d at 1403; *Hill*, 844 F.2d at 1412. Plaintiff did not lose the right to his chosen profession when he lost access to the Air Force One area. Since he still has a security clearance, plaintiff only lost the opportunity to perform his profession in a particular area or building. Having no protected interest in that access, plaintiff cannot have a liberty interest in the particular employment requiring such access. *Dorfmont*, 913 F.2d at 1403.

 The Air Force did not publicly disseminate the information used in its decision. Restricted disclosure to the employer and contractor for its use in assigning workers to the secured area is not stigmatizing. See *Doe v. Cheney*, 885 F.2d 898, 910 (D.C.Cir.1989). Gossip and speculation by others does not satisfy the publication requirement. A liberty interest is not impinged unless the false and stigmatizing information is made public by the government entity itself. *Derstein v. State of Kan.*, 915 F.2d 1410, 1414 (10th Cir.1990), *cert. pending*.

 "A clearance does not equate with passing judgment upon an individual's character." *Egan*, 484 U.S. at 528, 108 S.Ct. at 824. The Air Force informed BMAC that it was denying plaintiff access because of his "past history," in particular, his Soviet contacts that were the subject of the DIS report. These are nonspecific reasons which fall within the Supreme Court's rationale in *Egan*. Because clearance may be denied for reasons ranging from past conduct to familial ties with a hostile country, the mere act of denying clearance does not imply "disloyalty or any other repugnant characteristic." 484 U.S. at 528–29, 108 S.Ct. at 824–825. Plaintiff cannot show the defendant deprived him of a liberty interest.

 Plaintiff next claims the Air Force acted arbitrarily and capriciously in denying him access and thereby violated his right to substantive due process under the Fifth Amendment. This claim clearly reveals plaintiff's desire to have the merits of the Air Force's decision reviewed. Assuming such a claim could be made, plaintiff must allege a liberty or property interest to trigger substantive due process guarantees. *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). Unable to meet this burden, the plaintiff cannot prevail on his substantive due process claim.

 Plaintiff's last constitutional attack is that his right to freedom of speech and association under the First Amendment was violated. Again, it is apparent this claim is a pretense for obtaining judicial review on the substance of the Air Force's decision. In particular, the plaintiff argues:

> Plaintiff's activities were *clearly innocent* and hence protected by the First Amendment. There was no reason to consider them as evidence of questionable character or loyalty to the United States or of a suspicious nature
>
> . . . .
>
> Defendant's contention in its brief that the call to the Embassy and the visit in the hotel lobby raise legitimate concerns about Plaintiff's motives has no merit. It cannot withstand careful analysis. Assuming these contacts were the basis for the denial of the Air Force One access they too would violate the First Amendment.

(Dk. 45; p. 56). Nonetheless, the court will take up the plaintiff's First Amendment claim.

Plaintiff couches his claim in two approaches. First, BMAC originally denied him access because of his political activities and the defendant knew BMAC's motivation and simply upheld it in also ruling against plaintiff's access. Second, the defendant was concerned over the content of the plaintiff's messages to Soviet citizens which were clearly political in nature. Neither approach presents a colorable constitutional claim.

The evidence of record does not show that the defendant in any way intended to ratify or affirm any action taken by BMAC as a result of plaintiff's political activities. None of the documents show or sustain an inference that the plaintiff's anti-nuclear protests or campaign activities in support of candidates from the Democratic party were a substantial or motivating factor in the Air Force's decision. See *Conaway v. Smith,* 853 F.2d at 795. The only reasonable reading of the letter of July 27th from Lt. Col. Johnson to BMAC is that plaintiff's "past history," as evidenced in BMAC'S report to the DIS, was the reason for the access restriction. The fact some later statements in internal Air Force memoranda, dated after July 27th, make obscure references to other possible considerations does not raise a genuine issue of material fact in this court's judgment.

The Supreme Court in *Egan* elevated the predictive judgments involved in security clearances to a level beyond direct judicial review. The Court recognized the executive agency must have broad discretion to determine who may have access to information and what constitutes a potential security risk. 484 U.S. at 529, 108 S.Ct. at 825. The content of plaintiff's conversations with Soviet citizens obviously must be a subject of inquiry in evaluating him as an appropriate candidate for access to the Air Force One area. This alone does not elevate the plaintiff's speech to a protected status nor establish a violation of the First Amendment.

On both occasions, the content of plaintiff's conversations was seemingly innocuous and personal in nature. Assuming the speech addressed a matter of public concern, this court is not willing to compromise national security and substitute its decision for that of the Air Force on what is a security risk. To deny access on the basis of plaintiff's contacts with Soviet citizens is not so unreasonable or untenable as to justify a closer scrutiny, or judicial investigation of sorts, into the Air Force's reasoning. Plaintiff's employment continued at BMAC in the same position and only his responsibilities were affected to a limited degree. Plaintiff's right to speak and associate with others remained intact. In light of all these circumstances, the balance strongly favors the defendant's exercise of broad discretion in deciding who should have access to an area secured for important national interests. The court is unable to find a colorable constitutional claim under the First Amendment.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 22) is granted.