Michael MANGINO, Plaintiff,

v.

DEPARTMENT OF the ARMY and Defense Investigative Service, Defendants.

Civ. A. No. 91–2318–GTV.

United States District Court, D. Kansas.

March 30, 1993.

Michael Mangino, pro se.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case comes before the court on the following motions:

Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 18);

Plaintiff's Motion for Summary Judgment (Doc. 27);

Defendants' Supplemental Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 53);

Plaintiff's Motion for Summary Judgment (Doc. 56);

Plaintiff's Motion for Oral Argument (Doc. 39);

Plaintiff's Motion for Oral Argument (Doc. 58);

Plaintiff's Motion to Strike (Doc. 66); and

Plaintiff's Motion to Delay Summary Judgment Decision (Doc. 70).

All motions have been responded to by the opposing party. For the reasons stated below, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 18) and Supplemental Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 53) are granted. Plaintiff's Motions for Summary Judgment (Docs. 27 and 56) are denied. Plaintiff's Motions for Oral Argument (Docs. 39 and 58) are denied. Plaintiff's Motion to Strike (Doc. 66) is denied. Plaintiff's Motion to Delay Summary Judgment Decision (Doc. 70) is denied as moot.

This case concerns Plaintiff Michael Mangino's disputes with the United States Army regarding a 1984 revocation of his security clearance. Plaintiff brought this action *pro se* on August 22, 1991, seeking damages, declaratory relief, reenlistment in the Army, and other relief. Specifically, plaintiff asserts claims under the Privacy Act, 5 U.S.C. 552a(g)(1)(C) and (g)(4), constitutional violations, and review of the Army's compliance with its own regulations and procedures under the Administrative Procedures Act, 5 U.S.C. § 706.

## I. FACTUAL BACKGROUND

The pertinent uncontroverted facts established by the parties in accordance with D.Kan. Rule 206(c) are as follows:[1]

Plaintiff Michael Mangino is a former Sergeant of the United States Army. In October, 1983, the Defense Investigative Service began a full field investigation of plaintiff pursuant to a 5-year periodic re-investigation before re-granting a Top Secret security clearance held by plaintiff. In December, 1983, plaintiff departed the United States and was assigned to U.S. Army Headquarters, NATO, in the Netherlands.

---

1. The court notes that there are many facts in this case which are controverted. However, the court concludes that none of the controverted facts are material to its decision.

On March 15, 1984, the Army issued a letter of intent to revoke plaintiff's security clearance. Plaintiff responded to the notice of intent to revoke security clearance on August 14, 1984. On September 21, 1984, the Army notified plaintiff that it had reviewed his August 14, 1984, response, but had nevertheless decided to revoke his security clearance.

On December 21, 1984, plaintiff wrote another letter regarding his security clearance. On March 6, 1985, the Army responded to plaintiff's December 21, 1984, letter and indicated that the decision to revoke his security clearance was based on a review of his record while a member of the Army, as well as a review of his record while he was a member of the Air Force in previous years. After the revocation of his security clearance, plaintiff was reclassified to another job position which did not require a security clearance.

In February, 1987, the Army began a new security investigation of plaintiff to determine his current eligibility for access to classified material. That investigation was stopped upon plaintiff's honorable discharge from the Army on March 20, 1987. The Army indicates the reason for his discharge as "expiration of term of service-reduction in authorized strength." Plaintiff thereafter enlisted in the Army Reserves. He was honorably discharged from the Army Reserves on March 20, 1990.

On July 5, 1989, plaintiff applied to the Army Board for Correction of Military Records (ABCMR) for correction of his military records pursuant to 10 U.S.C. § 1552. On August 10, 1990, the ABCMR requested the Army Central Clearance Facility (CCF) provide an advisory opinion regarding plaintiff's request for correction of his records. The advisory opinion was provided on August 21, 1990. On November 14, 1990, the ABCMR issued a Memorandum of Consideration, indicating that it had considered plaintiff's request and finding that plaintiff had failed to submit sufficient evidence to demonstrate the existence of probable error or injustice.

On February 14, 1990, plaintiff made a request under the Freedom of Information Act to obtain his military records. On May 21, 1991, plaintiff made a request for correction of records under the Privacy Act. On June 7, 1991, the Army informed plaintiff that it had determined that information provided by plaintiff in his May 21, 1991 letter would make his Army file more complete and that it would include the letter in his Army intelligence dossier to assure fairness. On August 20, 1991, plaintiff brought this lawsuit against the Department of the Army and the Defense Investigative Service.

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR FAILURE TO STATE A CLAIM

### A. Jurisdiction to Review the Merits of a Security Clearance Decision

■ Defendants have moved this court to dismiss this action in its entirety based on a lack of subject matter jurisdiction. Specifically, defendants argue that a decision to revoke a security clearance is not judicially reviewable. The court agrees that it has no authority to review the merits of a decision to revoke or deny a security clearance. *See Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988); *Hill v. Department of the Air Force*, 844 F.2d 1407, 1411 (10th Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1988). Thus, to the extent that any of plaintiff's claims require this court to evaluate the merits of the Army's decision to revoke plaintiff's security clearance, they are dismissed. However, plaintiff has sought more than a simple review of the merits of the Army's decision to revoke his security clearance. Plaintiff has also sought relief on account of alleged constitutional violations by the Army, he has sought a review by this court of whether the Army failed to follow its own regulations pertaining to the revocation of a security clearance, and he has asserted claims under the Privacy Act.

### B. Constitutional Claims

Based upon the *Hill* decision recently rendered by the Tenth Circuit Court of Appeals, the court concludes that plaintiff's claims based upon undifferentiated constitutional violations fail as a matter of law. While the exact nature of plaintiff's alleged constitutional claims is unclear, in his response to the

defendants' motion for summary judgment, plaintiff appears to be articulating a due process claim based upon either some type of liberty or property interest related to the security clearance, an interest created by the Army's regulations governing security clearances, a property interest in his employment with the Army, or some sort of defamation claim based on inaccuracies in his records. The court concludes that none of these states a cognizable constitutional claim.

■ In *Hill*, the Tenth Circuit held that a person has no property right or liberty interest in a security clearance upon which a constitutional claim can be based. *Id.* "Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right." *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). This conclusion was echoed by Judge Crow in the recent District of Kansas case *Beattie v. United States*, 759 F.Supp. 753 (D.Kan.), *appeal dismissed*, 949 F.2d 1092 (10th Cir.1991).

Further, the Tenth Circuit in *Hill* held that procedural rules relating to the suspension and revocation of clearances are not the type of rules which secure certain benefits and which support claims of entitlement to those benefits. *Hill*, 844 F.2d at 1411–12 (citations omitted). Thus, the Tenth Circuit held that constitutional rights will not be attached to a security clearance merely because rules have been promulgated to promote fairness and safeguard the rights of individuals. *Id.* at 1412.

■ Not only is there no constitutional right attached to a security clearance, but the court concludes that plaintiff has no constitutional claims rising from losing his job under the circumstances of this case. First, at least two courts have held that " '[i]f there is no protected liberty interest in a security clearance, there is no liberty interest in employment requiring such clearance.' " *Doe v. Schachter*, 804 F.Supp. 53, 58 (N.D.Cal.1992) (quoting *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991)). Second, it is uncontroverted that plaintiff remained in the Army for approximately three years after losing his security clearance. Although plaintiff contends that his lack of security clearance contributed to a non-promotable status which led to his discharge, it is uncontroverted that plaintiff was discharged from the service at the time his term expired. Plaintiff's only complaint, therefore, would be based on the Army's alleged denial of reenlistment. Because it is clearly established law that there is no right to enlist or reenlist in the armed forces, plaintiff cannot state a claim based upon some property interest in being employed by the Army. *See Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir.1981); *see also Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). This is not a case where a member of the armed service was discharged before his term of duty expired.

■ Finally, plaintiff's attempt to state a constitutional claim based upon defamation by the government also fails as a matter of law. Plaintiff has argued that his clearance was revoked due to false information, that he was stigmatized by the revocation, and that adverse action was taken against him by the Army based upon the revocation in that he was transferred to another job specialty and was not promoted. In order to establish a deprivation of a liberty or property interest in one's reputation, plaintiff must first establish that information was published which was false and stigmatizing. *Wulf v. City of Wichita*, 883 F.2d 842, 869 (10th Cir.1989).

■ Plaintiff's claim must fail due to clearly established law that the denial of a security clearance constitutes no judgment upon a person's character. *Beattie v. United States*, 759 F.Supp. at 761 (citing *Egan* 484 U.S. at 528, 108 S.Ct. at 824). Neither the parties nor this court have found any case where a claim for defamation or a constitutional due process claim based upon defamation arose from a denial of a security clearance. The denial of a security clearance could be based upon a wide variety of reasons having nothing to do with a person's character. *Id.* Although plaintiff argues that the revocation of a security clearance is somehow more stigmatizing than an initial denial of a security clearance, the court sees no practical difference. It is as likely that the revocation of a clearance could be based on reasons unre-

lated to character or conduct as an initial denial of a security clearance. Plaintiff's claims for constitutional violations are dismissed for failure to state a claim upon which relief can be granted.

The court also notes that in plaintiff's Amended Complaint, Fifth Cause of Action, plaintiff has attempted to allege some constitutional cause of action for monetary damages against individual defendants. Because *no individual defendants are named*, plaintiff's Fifth Cause of Action is dismissed for failure to state a claim upon which relief can be granted.

### C. Failure to Follow Regulations

█   In addition to the above claims, plaintiff seeks review in this court of the Army's alleged failure to follow its own regulations in revoking his security clearance, specifically, certain regulations found in the Code of Federal Regulations and certain Army regulations (ARs). The defendants assert that this court it without subject matter jurisdiction to hear this claim. The court disagrees. In *Hill,* the Tenth Circuit stated: "Constitutional questions aside ... courts do have the power to compel agencies to follow their own regulations." 844 F.2d at 1412 (citations omitted). The court went on to state that had the district court in that case found that the Air Force violated any particular procedure, the remedy would have been remand for the purpose of compliance with the applicable procedures. *Id.*

Although the brief statement in *Hill* is the Tenth Circuit's only statement on the reviewability of military security clearance procedural violations, the Fifth and the Ninth Circuits have adopted a two-tiered test to determine the reviewability of internal military decisions. *See Sebra v. Neville,* 801 F.2d 1135, 1141 (9th Cir.1986); *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971). Under this test, an decision is not reviewable unless the plaintiff alleges: (a) a violation of the Constitution, a federal statute, or a military regulation, and (b) exhaustion of available intraservice remedies. *Sebra,* 801 F.2d at 1141. Further, even if the plaintiff meets these prerequisites, the court must weigh four additional factors to determine whether review is appropriate: (1) the nature and strength of plaintiff's claim, (2) the potential injury to plaintiff if review is denied, (3) the extent to which review would potentially interfere with military functions, and (4) the extent to which military discretion or expertise is involved. *Id.*

Assuming that the Tenth Circuit would apply the foregoing test, plaintiff has met the first prong of the test in the present case by alleging that the military failed to follow its own regulations and that he has exhausted all available administrative remedies. Considering the four factors in the second prong of the test, the court sees no reason why plaintiff's claim for failure to follow regulations should not be reviewed by this court. The court is mindful, however, of the often-stated maxim that "judges are not given the task of running the Army." *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). On the other hand, courts have often reiterated the proposition that "[g]overnment must obey its own laws." *Dilley v. Alexander,* 603 F.2d 914, 920 (D.C.Cir.1979).

The granting, denial, or revocation of a security clearance is "sensitive" and "inherently discretionary." *Dorfmont v. Brown,* 913 F.2d 1399, 1401 (9th Cir.1990). Security decisions are uncertain, and rest upon the ability to predict an individual's future behavior. *Id.* The *Dorfmont* court described the standards for granting a security clearance as follows:

Because of the extreme sensitivity of security matters, there is a strong presumption against granting a security clearance. Whenever any doubt is raised about an individual's judgment or loyalty, it is deemed best to err on the side of the government's compelling interest in security by denying or revoking clearance. The general administrative standard is that a clearance may be granted or retained only if "clearly consistent with the interests of the national security."

*Id.* (citing *Egan,* 484 U.S. at 528, 108 S.Ct. at 824).

With the especially subjective and discretionary nature of security clearances in mind, the court in *Schachter* stated that review should not be undertaken if a review of the merits of the underlying decision would be involved.

804 F.Supp. at 60. This court concludes that it can review the defendants' compliance with applicable military regulations without any improper review of the merits of the Army's decision to revoke plaintiff's security clearance.

The court therefore will not dismiss this claim for lack of subject matter jurisdiction. The court's further review of this claim is included in this memorandum and order at Section III.

### D. Privacy Act Claims

■ Defendants have moved to dismiss plaintiff's claims brought under the Privacy Act, 5 U.S.C. § 552a(g)(1), as barred by the statute of limitations. Section 552a(g)(5) provides that an action to enforce any liability created under Section 552a must be brought within two years from the date on which the cause of action arose. The statute of limitations is jurisdictional, and it is plaintiff's burden to establish that the time limit has been met. *See Bowyer v. United States Dep't of Air Force*, 875 F.2d 632, 635 (7th Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir.1987).

■ Under the Privacy Act, a cause of action arises when 1) an error is made in maintaining plaintiff's records, 2) plaintiff was wronged by such error, and 3) plaintiff either knew or had reason to know of the error. *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir.1984), *cert. denied*, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). Defendants assert that the cause of action in the present case arose in May of 1984, when plaintiff became aware of the content of interviews conducted by the defendant Defense Investigative Service (DIS) in conjunction with plaintiff's security clearance investigation. Plaintiff contends, however, that the cause of action did not accrue until June, 1991, when plaintiff received his military records and discovered that sources used as the basis for revocation of his security clearance had not claimed confidentiality, and that there were several other alleged errors in the security clearance investigation. Further, plaintiff claims that the statute of limitations was tolled under 5 U.S.C. § 552a(g)(5) due to alleged willful misrepre-sentations by defendants regarding the confidentiality of sources.

The court concludes in the present case that the statute of limitations began to run no later than December 21, 1984. In letters dated May 18, 1984, and December 21, 1984, plaintiff responded to the Army's intended revocation of his security clearance. The contents of these letters clearly indicate that plaintiff had knowledge of the records which were being used as the basis for revoking his security clearance. Specifically, in the December 21, 1984, letter, plaintiff responded to statements of employment references developed during the investigation, stating: "[T]he following info/enclosures show that these 'developed' and 'employment' references to be questionable and biased at best." Although plaintiff complains that the Army willfully withheld the names of the sources it had developed as employment references, and that therefore the statute of limitations on any Privacy Act claim should be tolled, plaintiff responded in detail to the contents of those references in the December 21, 1984 letter. Although plaintiff may not have known for certain the identity of the sources developed in the security clearance investigation, he clearly had sufficient knowledge to put him on notice that an error or errors may have existed in his military records.

Under the Tenth Circuit's *Bergman* test, the statute of limitations on a Privacy Act claim—whether for monetary damages or to correct records—begins to run when the plaintiff "knew or had reason to know" of an error in his records. 751 F.2d at 316. In *Diliberti*, the Seventh Circuit elaborated on the *Bergman* test, holding that mere hearsay or rumors alluding to errors is sufficient to start the Privacy Act statute of limitations running. 817 F.2d at 1263–64. The *Diliberti* court also noted that the *Bergman* test takes into account 5 U.S.C. § 552a(g)(5)'s provision regarding the willful misrepresentation. *Id.* at 1262. Specifically, the court stated that "[b]y focusing on when the plaintiff first knew or had reason to know of an error in maintaining his records, the *Bergman* test incorporates this relief provision." *Id.* n. 1.

This court concludes that in light of the uncontroverted facts of this case regarding plaintiff's responses to the Army's intention to revoke his security clearance, as well as the Tenth Circuit's *Bergman* test, plaintiff's Privacy Act claims accrued on or before December 21, 1984. Further, because the uncontroverted facts of this case show that plaintiff did not apply to the ABCMR for correction of his military records until July 5, 1989, did not make a request for his military records under the Freedom of Information Act until February 14, 1990, and did not make a formal request under the Privacy Act until May 21, 1991, plaintiff's Privacy Act claims are now barred by the two-year statute of limitations which expired on December 21, 1986. As the Seventh Circuit in *Bowyer v. Department of Air Force* stated, a plaintiff is not required to rush into court and file suit upon learning that erroneous records may exist, but he or she has two years to investigate whether sufficient factual and legal bases exist for bringing a Privacy Act suit. 875 F.2d 632, 637 (7th Cir.1989). Plaintiff in the present case simply waited too long. This court lacks jurisdiction to hear plaintiff's Privacy Act claims due to the expiration of the Privacy Act's two-year statute of limitations.

## III. SUMMARY JUDGMENT

Because the court has determined that it has jurisdiction to review plaintiff's claims based upon alleged violations of military regulations, the court now considers whether summary judgment should be granted for either party on these claims.

### A. Standards for Summary Judgment

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### B. Scope of Review and Availability of Relief

As stated above, the court concludes that it has limited jurisdiction to review plaintiff's claims that the Army failed to follow its own regulations in revoking plaintiff's security clearance. The courts do have the power to compel agencies, including the Armed Services, to follow their own regulations. *Hill*, 844 F.2d at 1412. Jurisdiction to review an agency's compliance with its own regulations exists under 28 U.S.C. § 1343, and under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) and (D).

Under the Administrative Procedures Act, the reviewing court "shall review the whole record or those parts of it cited by a party." [2] 5 U.S.C. § 706. *See, e.g., Doe v. Schachter*, 804 F.Supp. 53, 63 (N.D.Cal.1992) ("inquiry would be limited to reviewing the underlying

---

**2.** The court sees no need to review the new and additional statements and affidavits submitted by the parties as attachments to their briefs. There has been no showing of bad faith which would require additions to the record, nor does the court find the new and additional statements to be explanatory of the record or pertinent to its determination of whether the Army complied with its own regulations.

record and determining if in fact the agency complied with the relevant regulations"); *Denton v. Secretary of Air Force,* 483 F.2d 21, 23 (9th Cir.1973) (district court heard action on the administrative record), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). If, after reviewing the record in the present case, the court was to find that the Army violated any particular procedure, the remedy would be a remand for the purpose of compliance with applicable procedures only. *Id.* (citing *Gayer v. Schlesinger,* 490 F.2d 740, 752 (D.C.Cir.1973)).

The court's inquiry is actually whether the revocation of plaintiff's security clearance is in "substantial compliance" with military regulations. *See Arnheiter v. Ignatius,* 292 F.Supp. 911, 921–22 (N.D.Cal.1968), *aff'd sub. nom, Arnheiter v. Chafee,* 435 F.2d 691 (9th Cir.1970). In *Arnheiter,* the District Court found that even if the Navy had not literally complied with all applicable regulations, the Navy had relieved plaintiff of his command in substantial conformance with its regulations. *Id.* at 926. Summary judgment was granted for the Secretary of the Navy. *Id.* Following *Arnheiter,* which is one of the very few cases where a reviewing court found any violations of a service's procedural regulations, this court will only remand the present case to the Army if it determines that the revocation of plaintiff's security clearance was not in substantial compliance with its applicable regulations.

### C. Review of the Administrative Record

█ Plaintiff alleges that multiple violations of Army regulations occurred during the investigation and subsequent revocation of his Top Secret security clearance. The specific regulations which he alleges were violated are addressed in the following paragraphs. The court will not discuss general allegations made by plaintiff in his Amended Complaint such as defendants' failure to comply with "32 CFR et seq." and "32 CFR 154 et. seq." 32 CFR is an entire volume of the Code of Federal Regulations, and 32 CFR

§ 154 contains seventy-seven individual regulations, as well as multiple appendices. The Fourth Circuit in *Jamil v. Secretary, Dep't of Defense,* 910 F.2d 1203, 1208 (4th Cir.1990), noted that plaintiff must explicitly show which procedural regulations he claims were violated in order to withstand a motion for summary judgment. Thus, to the extent plaintiff has made general allegations that defendants failed to comply with procedural rules without specifically listing the individual regulations, summary judgment for the defendants is granted.

The regulations discussed below pertain only to the investigation and revocation of plaintiff's security clearance. They do not pertain to the ABCMR's decision not to correct plaintiff's military records. A thorough review of plaintiff's Amended Complaint reveals no allegations that the decision of the ABCMR was arbitrary and capricious or conducted in violation of agency regulations. Therefore, this court will review the Administrative Record only to determine whether the Army's background investigation of plaintiff and subsequent security clearance revocation were conducted in accordance with agency regulations.

1. **Plaintiff's claim that defendants failed to expand the investigation to the extent necessary to substantiate or disprove adverse or questionable information, including allegations of misconduct or counseling sessions as required by 32 CFR § 154.8(j) and AR 604–5 § 2–306(a) and 2–307.[3]**

After reviewing the entire Administrative Record, as well as the text of the regulations cited by plaintiff, the court concludes that there is no evidence in the record which shows that the Army or the DIS failed to expand the investigation to the extent necessary to substantiate or disprove allegations of misconduct or counseling sessions. In fact, the record clearly shows that the Army recognized some allegations about plaintiff as substantiated and others as unsubstantiated.

---

3. Plaintiff also listed AR 604–5 § 2–304(a) as a regulation which the defendants failed to comply with in not expanding their investigation. As the court's review of this regulation shows it to be a definition of a "Special Investigative Inquiry," and not a regulation regarding how to resolve adverse information, the court assumes this was

a typographical error, and that plaintiff meant only to cite AR 604–5 § 206(a). If the court is incorrect in this assumption, the court alternatively rules that AR 604–5 § 2–304(a) is not a regulation which the Administrative Record indicates was violated by the defendants.

Further, the language in the 32 CFR § 154.8(j) and AR 604–5 § 2–307 "to the extent necessary" grants discretion to the investigators. Additionally, AR 604–5 § 2–306(a) indicates that a personal interview should be conducted during the course of an initial or expanded investigation to resolve potential adverse information. Plaintiff complains that he was not personally interviewed by the defendants during the course of the security investigation. However, 32 CFR § 154, App. A § 5(b)(3)(b) indicates that personal interview is not required if subject is at an overseas location at the time of an investigation. The record indicates (1) that a statement of personal history was obtained from plaintiff on October 24, 1983, when the investigation began, and (2) that plaintiff was thereafter sent to the Netherlands during the investigation and another interview was not feasible. Based on the court's thorough review of the record, as well as its reading of the above-cited regulations, there was no violation of these regulations.

2. **Plaintiff's claims that defendants failed to verify plaintiff's supervisors or duty position to determine the accuracy of a reference as required by 32 CFR § 154, App. A § 5(b)(4) and did not address discrepancies between official written records and DIS reports as required by that regulation.**

The regulation which plaintiff alleges is violated by defendants' alleged failure to verify plaintiff's supervisors or duty position and failure to address discrepancies between official records and DIS reports states merely that "current employment will be verified." 32 CFR § 154, App. A § 5(b)(4). The court concludes, based on its review of the record, that plaintiff's employment was verified by the agents of defendants conducting the security investigation.

3. **Plaintiff's claim that the DIS failed to grant plaintiff a personal interview as required under 32 CFR §§ 154.3(r), 154.8(h)(i)(1) and (2), 154.10(c), 154.35(a), 32 CFR § 154, App. A § 5(b)(3); AR 604–5 § 2–306(a).**

The regulations relied upon by plaintiff indicate that investigating agents should ob-

tain information to the greatest extent possible from the subject of an investigation. The record does indicate that a statement of personal history was obtained from plaintiff by Carolyn Herring, apparently an employee of the Army, on October 24, 1982, when the security investigation was beginning. Plaintiff appears to argue that some other type of personal interview should have been granted. However, as noted by the court in section (1) above, 32 CFR § 154, App. A § 5(b)(3)(b) clearly states that a subject interview is not required if the subject is at an overseas location. The record indicates plaintiff was sent overseas during the investigation. Further, 32 CFR § 154.8(i)(5)(ii)(c) states that when a subject interview is not feasible the reason shall be noted by investigators. The record indicates that the reason for the lack of any other personal interview was so noted. Further, in his December 21, 1984, letter, plaintiff indicated that he understood that a personal interview with a special agent was not possible. Thus, plaintiff has failed to show any violation of the above-cited Army regulations.

4. **Plaintiff's claim that defendants failed to reinvestigate to prove or disprove allegations relating to adverse information per 32 CFR § 154.19(a)(1), AR 604–5 §§ 3–700(a), 3–701, and AR 604–5 § 2–402(c) after plaintiff requested that they do so.**

Upon reading these regulations specified by plaintiff, the court concludes that none are directives requiring the defendants to prove or disprove allegations relating to adverse information. 32 CFR § 154.19(a)(1) merely designates those circumstances in which reinvestigations are authorized. Similarly, AR 604–5 § 3–700(a) only "authorizes" certain reinvestigations. AR 604–5 § 3–701 only lists the circumstances when reinvestigations "may be requested." Finally, AR 604–5 § 2–402(c) is not applicable to plaintiff's situation, in that it deals with circumstances where adverse information has turned up on a person outside a formal investigative setting. Thus, the court finds no violation of the above-listed regulations.

**5. Plaintiff's claim that the Army failed to present information to plaintiff which it claimed would have provided a basis for revocation of plaintiff's security clearance regardless of other unsubstantiated or disputed information per 32 CFR §§ 154.55(b) and 154.56(b)(1).**

Sections 154.55(b) and 154.56(b)(1) are regulations which are clearly not intended to provide an independent source of procedural or substantive protection. Section 154.55 begins with the admonition:

> This Subpart is intended only to provide guidance for the internal operation of the Department of Defense and is not intended to, does not, and may not be relied upon, to create or enlarge the jurisdiction or review authority of any court or administrative tribunal, including the Merit Systems Protection Board.

The court interprets such language as a clear indication that Subpart H, which includes sections 154.55(b) and 154.56(b)(1), does not limit the defendants' discretion in and of itself. *See Doe v. Casey,* 796 F.2d 1508, 1519 (D.C.Cir.1986), *aff'd in relevant part sub. nom, Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). In any event, the court concludes that the defendants did comply with 32 CFR § 156.(b)(1) [4] by providing plaintiff with a written statement of the reasons why the unfavorable administrative action—revocation of plaintiff's security clearance—was taken.

Plaintiff's Amended Complaint alleges that the statement of reasons was not sufficiently detailed. However, 32 CFR § 154.56(b)(1) merely states that the "statement shall be as comprehensive and detailed as the protection of sources afforded confidentiality ... and national security permit." Plaintiff states in his Amended Complaint that the regulation was violated when an advisory opinion of the Central Clearance Facility (CCF) inferred that his clearance would have been revoked regardless of unsubstantiated information from the security investigation due to other information in his file of which he had no knowledge. However, upon review of the record, the court notes that the CCF's opinion actually stated, "Mr. Mangino's security dossier depicted an individual whose reliability, judgment and trustworthiness were suspect." Although this is not a particularly precise statement, when read in the context of the CCF's entire advisory opinion, the court can find no violation of 32 CFR § 154.56(b)(1).

**6. Plaintiff's claim that defendants failed to request a Special Investigative Inquiry to resolve all issues of doubt as provided for under 32 CFR §§ 154.8(g), 154.19(b), and AR 604-5 §§ 2–304(a)(2) and 2–402(c).**

Upon scrutiny of these regulations with which plaintiff alleges the defendants failed to comply, the court concludes that none of the above-cited regulations provides a directive to the defendants. Rather, AR 604-5 § 2–304(a)(2) merely defines a Special Investigative Inquiry. 32 CFR § 154.8(g) and AR 604-5 § 2–402(c) are not applicable to plaintiff's situation because they deal with Special Investigative Inquiries where derogatory information has come to light outside a regular investigation. 32 CFR § 154.19(b) merely states that a Special Investigative Inquiry "may be requested to resolve all relevant issues in doubt." Thus, none of these regulations were "violated" by the defendants.

**7. Plaintiff's claim that the DIS failed to fully check local records to ascertain the validity of information under 32 CFR § 154, App. A § 5(b)(4).**

Although 32 CFR § 154, App. A § 5(b)(4) does state that employment records will be checked wherever employment interviews are conducted, the court can find no evidence in the record that defendants failed to do so. To the contrary, the portions of the Administrative Record which pertain to the security investigation of plaintiff are replete with references to plaintiff's employment and employment evaluations. Plaintiff has failed to demonstrate any failure of the defendants to comply with this regulation.

---

**4.** 32 CFR § 154.55(b) merely establishes the procedure by which adverse information on a sub-

ject is referred for action.

In summary, based upon the court's review of the entire record in this case, as well as its understanding of the specific military regulations cited by plaintiff, the court grants summary judgment for the defendants on the issue of whether defendants complied with their own regulations. The court finds no violation of any regulation cited which would warrant remand to the Army for compliance. Not only did the defendants "substantially comply" with Army Regulations, but it appears to the court that there was technical compliance as well. *See Arnheiter v. Ignatius,* 292 F.Supp. 911, 921–22 (N.D.Cal.1968) ("substantial compliance" standard), *aff'd sub. nom, Arnheiter v. Chafee,* 435 F.2d 691 (9th Cir.1970). The court understands plaintiff's frustration with the security clearance investigation process and with information he considers inaccurate, but, the court has no jurisdiction to review any claim but the failure to comply with regulations claim under the Administrative Procedures Act. The court simply can find no violation of the Army's rules or regulations in the Administrative Record. Therefore, no remand is warranted.

## IV. OTHER PENDING MOTIONS

Because the court has granted defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, this case is dismissed and all other pending motions are moot. The court notes that Plaintiff's Motion to Strike (Doc. 66) would have been denied anyway. In that motion, plaintiff contends that the defendants' acquisition and disclosure to this court of parts of the Administrative Record were improper. As noted earlier in this opinion, review under the Administrative Procedures Act is generally limited to a review of the Administrative Record. Because plaintiff brought a claim under the Administrative Procedures Act, defendants properly submitted the entire record to this court. Plaintiff has not challenged the accuracy of the Administrative Record or argued that items which were properly a part of the record were not submitted; he merely challenged its submission to the court.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 18) and Supplemental Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 53) are granted.

IT IS FURTHER ORDERED that Plaintiff's Motions for Summary Judgment (Docs. 27 and 56) are denied.

IT IS FURTHER ORDERED that Plaintiff's Motions for Oral Argument (Docs. 39 and 58) are denied.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Doc. 66) is denied. Plaintiff's Motion to Delay Summary Judgment Decision (Doc. 70) is denied as moot. This case is hereby closed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**